IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL VANCE and NATHAN ERTEL, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) No. 06 C 6964 |
| v. | ) |
| | ) Wayne R. Andersen |
| DONALD RUMSFELD, UNITED STATES OF AMERICA and UNIDENTIFIED AGENTS, | ) District Judge<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

Plaintiffs Donald Vance and Nathan Ertel filed a fifteen-count complaint in this Court against Defendants Donald Rumsfeld, the United States of America, and Unidentified Agents, alleging violation of their constitutional rights. This matter is before the Court on Defendants' motion to transfer venue to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1404(a). For the foregoing reasons, Defendants' motion is denied.

## BACKGROUND

According to the Complaint, Plaintiffs Donald Vance and Nathan Ertel, both American citizens, traveled to Iraq in the fall of 2005 to work for a private Iraqi security firm, Shield Group Security ("SGS"). In the course of their employment, Plaintiffs allegedly observed payments made by SGS agents to certain Iraqi sheikhs. They also claim to have seen mass acquisitions of weapons by the company and sales in increased quantities. Questioning the legality of these transactions, Vance claims to have contacted the FBI during a return visit to his native town of Chicago to report what he had observed. Vance asserts that he was put in contact with Travis Carlisle, a Chicago FBI agent, who arranged for Vance to continue to report

suspicious activity at the SGS compound after his return to Iraq. Vance alleges to have complied with Carlisle's request and continued to report to him daily. Several weeks later, Vance claims Carlisle put him in contact with Maya Dietz, a United States government official working in Iraq. Dietz allegedly requested that Vance copy SGS's computer documents and forward them to her. Vance contends that he complied with that request.

Plaintiff Ertel claims to have been aware of Vance's communications with the FBI and alleges to have contributed information to that end. Ertel asserts that both he and Vance communicated their concerns with SGS to Deborah Nagel and Douglas Treadwell, two other government officials working in Iraq.

Plaintiffs contend that suspicions within SGS grew as to Vance and Ertel's loyalty to the firm. On April 14, 2006, armed SGS agents allegedly confiscated plaintiffs' access cards which permitted them freedom of movement into the "Green Zone" and other United States compounds. This action effectively trapped plaintiffs in the "Red Zone" and within the SGS compound. Plaintiffs claim to have contacted Nagel and Treadwell who instructed them to barricade themselves in a room in the SGS compound until United States forces could come rescue them. Plaintiffs were later successfully removed from the SGS compound by United States forces.

Plaintiffs were then taken to the United States Embassy. Military personnel allegedly seized all of plaintiffs' personal property, including their laptop computers, cellular phones, and cameras. At the Embassy, Plaintiffs claim they were separated and then questioned by an FBI agent and two other persons from United States Air Force Intelligence. Plaintiffs contend that they disclosed all their knowledge of the transactions of SGS and directed the officials to their laptops where most of the information had been documented. Plaintiffs also assert that they

informed the officials of their contacts with agent Carlisle in Chicago, and agents Nagel and Treadwell in Iraq. Following these interviews, Plaintiffs claim they were escorted to a trailer to sleep for two to three hours.

Plaintiffs claim they were awoken by several armed guards who then placed them under arrest, handcuffing and blindfolding Vance and Ertel and pushing them into a humvee. Plaintiffs contend that they were labeled as "security internees" affiliated with SGS, some of whose members were suspected of supplying weapons to insurgents. According to Plaintiffs, that information alone was sufficient, according to the policies enacted by defendant Rumsfeld and others, for the indefinite, incommunicado detention of Plaintiffs without due process or access to an attorney. Plaintiffs claim to have been taken to Camp Prosperity, a United States military compound in Baghdad. There they allege they were placed in a cage, strip searched, and fingerprinted. Plaintiffs assert that they were taken to separate cells and held in solitary confinement 24 hours per day.

After approximately two days, Plaintiffs claim they were shackled, blindfolded, and placed in separate humvees which took them to Camp Cropper. Again, Plaintiffs allegedly were strip searched and placed in solitary confinement. During this detention, Plaintiffs contend that they were interrogated repeatedly by military personnel who refused to identify themselves and used physically and mentally coercive tactics during questioning. All requests for an attorney allegedly were denied.

On or about April 20, 2006, Plaintiffs each received letters from the Detainee Status Board indicating that a proceeding would be held April 23rd to determine their legal status as "enemy combatants," "security internees," or "innocent civilians." The letter informed Plaintiffs they did not have a right to legal counsel at that proceeding. The letter also informed Plaintiffs

3

they would only be permitted to present evidence or witnesses for their defense if they were reasonably available at Camp Cropper. On April 22nd, Vance and Ertel allegedly each received a notice stating that they were "security internees." The letter informed Plaintiffs they had the right to appeal by submitting a written statement to camp officials. Both Vance and Ertel appealed, requesting each other as witnesses and their seized personal property as evidence.

On April 26, 2006, Plaintiffs allegedly were taken before the Detainee Status Board. Ertel and Vance claim they were not provided with the evidence requested, nor were they permitted to testify on the other person's behalf. Plaintiffs assert that they were not permitted to see the evidence against them or confront any adverse witnesses.

On May 17, 2006, Major General John Gardner authorized the release of Ertel, allegedly 18 days after the Board officially acknowledged that he was an innocent civilian. Vance's detention continued an additional two months, where he was continuously interrogated. On July 20, 2006, several days after Major General Gardner authorized his release, Vance was permitted to leave Camp Cropper. Neither Plaintiff was ever charged with any crime.

On December 18, 2006, Plaintiffs initiated this lawsuit against Defendants for the alleged constitutional violations that occurred in Iraq by the unidentified agents of the United States as well as for the practices and policies enacted by Rumsfeld which allegedly authorized such actions by those agents. Both Plaintiffs are residents of the State of Illinois. Although there appears to be some uncertainty regarding Defendant Rumsfeld's place of residence, he has recently filed an affidavit stating that his current permanent place of residence is the State of Maryland. Prior to that, he was domiciled in Illinois.

Defendants have filed a motion to transfer venue to the District Court for the District of Columbia ("D.C."), alleging that the District of Columbia would be a more convenient forum in

which to litigate this claim.

## DISCUSSION

Pursuant to Section 1404(a), "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To succeed on a motion to transfer venue, the defendant must demonstrate that: (1) venue is proper in the transferor district;(2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *See, e.g., Auston v. State,* 116 F.3d 1482, n.3 (7th Cir. 1997); *Vandeveld v. Christoph,* 877 F. Supp. 1160, 1166 (N.D. Ill. 1995).

In evaluating the third prong, courts consider both the private interests of the parties and the public interest of the court. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947). The party seeking transfer bears the burden of showing that "the transferee forum is *clearly more convenient* than the transferor forum." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir. 1986) (emphasis added). Because "the Court may consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents," the moving party must present more than "mere allegations" to support its claim. *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983). Transfer is not appropriate if it will merely transform an inconvenience for one party into an inconvenience for another. *See Coffey,* 796 F.2d at 220.

In this case, venue and jurisdiction are proper in both this Court and the District of Columbia. Thus, our analysis will focus on the third factor–the convenience of the parties and witnesses and the interests of justice.

I.  The District of Columbia Is Not A More Convenient Forum

In this case, Defendants have failed to meet their burden under the third 1404(a) prong. Evaluation of the private and public factors that comprise a Section 1404(a) analysis demonstrates that a transfer of this case to the District of Columbia will not make this litigation "clearly more convenient."

    A.       The Private Interest Factors Weigh Against Transfer

There are five private interest factors that courts typically evaluate: (1) Plaintiffs' choice of forum; (2) the convenience of the forum for the parties; (3) the convenience of the forum for the witnesses; (4) the situs of material events; and (5) the ease of access to sources of proof. *See Schwartz v. Nat'l Van Lines, Inc.,* 317 F. Supp.2d 829, 833 (N.D. Ill. 2004). Here, each of these factors either weighs against transfer or is, at best, neutral.

        1.  Plaintiffs' Forum Choice

It has long been held that "the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). This is particularly true if plaintiff's choice of forum is also the plaintiff's home. *See Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). Here, Plaintiffs' choice to file in the Northern District of Illinois is entitled to deference. Both Plaintiffs reside in Chicago. Mr. Vance has resided in Chicago his entire life. Mr. Ertel, recently returned from living abroad, and chose to make his home here.

Moreover, Plaintiffs' choice to file suit here is a reasonable one. Many of the material events leading up to the events alleged occurred right here in Chicago. In addition, Travis Carlisle and other agents or supervisors in the Chicago FBI are key witnesses. While these connections alone make Plaintiffs' choice to file here reasonable, we note that Defendant Rumsfeld also has substantial connections to Chicago.

Thus, Plaintiffs here are entitled to the same deference usually afforded a plaintiff's choice of forum, and that presumption weighs against transfer in this case. See, *e.g*, *Vandeveld*, 877 F. Supp. at 1167.

  2. <u>Convenience Of The Parties</u>

Similarly, an evaluation of the convenience of the parties makes plain that this case should not be transferred to the District of Columbia. Plaintiffs are residents of Illinois, and it is clear from the public record that the only identified Defendant, Mr. Rumsfeld, maintains very strong ties to Illinois, and to Chicago, in particular. Mr. Rumsfeld's corporation, D.H.R. Foundation, is in Illinois. Mr. Rumsfeld's wife made political contributions in 2006 from a Wacker Drive address in Chicago, and Mr. and Mrs. Rumsfeld have several other Chicago addresses. While Rumsfeld's current permanent place of residence is Maryland, the inconvenience to him by having to defend a case in Illinois is less than usual due to his connections to this area.

For these reasons, the convenience of the parties factor, therefore, does not militate in favor of a transfer of this case.

  3. <u>Convenience Of The Witnesses</u>

In addition to the convenience of the parties, courts evaluate the convenience of the witnesses when resolving a motion to transfer. To be sure, "the convenience of the witnesses is one of the most important factors to be considered." *First Nat'l Bank v. El Camino Resources Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). In addition to consideration of the number of potential witnesses located in any one district, courts also consider the nature and quality of their testimony on the issues that are actually in dispute in the case. *Id.* Thus, the more significant the witness is to the issues which will have to be decided, the greater the weight given to that

witness' convenience.

Courts cannot weigh these factors in a vacuum. Thus, to satisfy their burden, moving parties must "clearly specify the key witnesses to be called" and describe their testimony in a manner that goes beyond vague generalizations. *See Heller Fin. Inc.*, 883 F.2d at 1293.

In this case, this factor appears to be a draw. While Defendants make the valid point that many of the witnesses with regard to the policies implemented by the government likely will be located in the District of Columbia, Plaintiffs have also identified several witnesses who reside in Illinois or another Midwest state whose testimony apparently will be relevant to the material issues. In addition, Plaintiffs found three other important witnesses who are closer to Illinois than D.C.-- one in California, one in Texas, and one in South America. As such, and as this Court has found previously, when witnesses are scattered across the country, "Illinois is a centrally located forum in which to adjudicate this dispute." *See Avery Dennison Corp.*, 1997 WL 106252, at *3.

For these reasons, Defendants have not met their burden of proving that the District of Columbia is clearly a more convenient forum for the witnesses.

### 4. Situs of Material Events

Another factor that courts consider in making their Section 1404(a) determination is the situs of material events. *See Schwartz v. Nat'l Van Lines, Inc.,* 317 F. Supp.2d 829, 835 (N.D. Ill. 2004). There is no doubt that the events giving rise to this case occurred in multiple jurisdictions, notably Iraq, the District of Columbia and Chicago. Iraq was a locus of numerous events, but it is not a fit place to litigate, and it is also not a venue to which 1404(a) applies.

Between the District of Columbia and Chicago then, Chicago has an edge as the locus of material events. Chicago is where Mr. Vance and Mr. Carlisle began the relationship by which

Plaintiffs became alleged informants to the Chicago FBI office. The reports that resulted in the alleged retaliation against Plaintiffs occurred in Chicago. To the extent Agent Carlisle's alleged misrepresentations to Ms. Schwarz prevented Plaintiffs from receiving help to end their detentions, that too occurred in Chicago. Finally, although Defendants are correct that many of the policies and practices Plaintiffs allege violated their constitutional rights may have emanated from the District of Columbia, it is certainly possible that at least some of the acts or failures to act that caused or extended Plaintiffs' detentions occurred in Chicago. We do not yet know who was involved in the decision making process regarding Plaintiffs' detentions.

Given this substantial connection to Illinois, it is simply not the case that it would be "clearly more convenient" to litigate in the District of Columbia.

### 5. Access to Sources of Proof

The final private interest consideration is the parties' access to sources of proof. Defendants argue that all of their evidence is located in either Iraq or various government offices in Washington, D.C., and the surrounding area. Although Defendants did not specify in their motion to transfer what that evidence is, much of it is almost certain to be documentary in nature and, therefore, subject to compulsory process for production in this jurisdiction. Such evidence is not a weighty concern in the transfer analysis. See *In re Automotive Refinishing Paint Antitrust Litigation*, 229 F.R.D. 482, 494 (E.D. Pa. 2005). Moreover, there is no doubt that "each party can efficiently transport to this district those documents necessary for trial." *Avery Dennison Corp.*, 1997 WL 106252, at *2; see also *Midwest Precision Servs., Inc.*, 574 F. Supp. at 661 n. 6.

Therefore, analysis of the access to sources of proof factor does not weigh in favor of a transfer.

B. Public Factors Also Weigh Against Transfer

Like the private interest factors enumerated above, the public interest factors also weigh against transfer. Factors traditionally considered in this "interest of justice" analysis relate to the efficient administration of justice, the court's familiarity with the relevant law, as well as whether the jurors in a particular district have a stake in the outcome of the litigation. See *Coffe*, 796 F.2d at 221 & n.4; *The Northwestern Corp.*, 1996 WL 73622, at *4.

In this case, the "interest of justice" factors favor neither district because both courts are familiar with the law and, presumably, will adminster justice efficiently. Moreover, citizens of both judicial districts have the same, strong interests in seeing to it that the Constitution is followed.

While Defendants argue that this case should be transferred to the District of Columbia in anticipation of possible multi-district litigation, that is not the current posture of the case. Plaintiffs are the "master[s] of the complaint, and this includes the choice of where to bring suit" and who to sue. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). Conjecture as to what may or may not happen in the future is not relevant to the decision we must make today. At present, Plaintiffs have chosen to bring only one suit and that is the case currently before this Court.

For these reasons, Defendants have not carried their burden of proving that the public factors militate in favor of transferring this case to the District of Columbia, and their motion to transfer venue is denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for transfer of venue [#31] is denied.

This case is set for status on October 11, 2007 at 9:00 a.m.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: _September 19, 2007_____