**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Donald Vance and Nathan Ertel,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 06 C 6964** |
| | ) | |
| **Donald Rumsfeld, United States of** | ) | **Wayne R. Andersen** |
| **America and Unidentified Agents,** | ) | **District Judge** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM, OPINION AND ORDER**

This case is before the Court on the motion of Defendant United States of America to dismiss Count XIV of Plaintiffs' Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Also before the Court are the United States' objections to Magistrate Judge Keys' order. For the following reasons, the motion to dismiss and the objections to Magistrate Judge Keys order are denied.

**BACKGROUND**

According to the Second Amended Complaint, Plaintiffs Donald Vance and Nathan Ertel, both American citizens, traveled to Iraq in the fall of 2005 to work for a private Iraqi security firm, Shield Group Security ("SGS"). In the course of their employment, Plaintiffs allegedly observed payments made by SGS agents to certain Iraqi sheikhs. They also claim to have seen mass acquisitions of weapons by the company and sales in increased quantities. Questioning the legality of these transactions, Vance claims to have contacted the FBI during a return visit to his native town of Chicago to report what he had observed. Vance asserts that he was put in contact with Travis Carlisle, a Chicago FBI agent, who arranged for Vance to

continue to report suspicious activity at the SGS compound after his return to Iraq. Vance alleges to have complied with Carlisle's request and continued to report to him daily. Several weeks later, Vance claims Carlisle put him in contact with Maya Dietz, a United States government official working in Iraq. Dietz allegedly requested that Vance copy SGS's computer documents and forward them to her. Vance contends that he complied with that request.

Plaintiff Ertel claims to have been aware of Vance's communications with the FBI and alleges to have contributed information to that end. Ertel asserts that both he and Vance communicated their concerns with SGS to Deborah Nagel and Douglas Treadwell, two other government officials working in Iraq.

Plaintiffs contend that SGS became suspicious about Vance and Ertel's loyalty to the firm. On April 14, 2006, armed SGS agents allegedly confiscated plaintiffs' access cards which permitted them freedom of movement into the "Green Zone" and other United States compounds. This action effectively trapped plaintiffs in the "Red Zone" and within the SGS compound. Plaintiffs claim to have contacted Nagel and Treadwell who instructed them to barricade themselves in a room in the SGS compound until United States forces could come rescue them. Plaintiffs were later successfully removed from the SGS compound by United States forces.

Plaintiffs were then taken to the United States Embassy. Military personnel allegedly seized all of plaintiffs' personal property, including their laptop computers, cellular phones, and cameras. At the Embassy, Plaintiffs claim they were separated and then questioned by an FBI agent and two other persons from United States Air Force Intelligence. Plaintiffs contend that they disclosed all their knowledge of the transactions of SGS and directed the officials to their laptops where most of the information had been documented. Plaintiffs also assert that they

informed the officials of their contacts with agent Carlisle in Chicago, and agents Nagel and Treadwell in Iraq. Following these interviews, Plaintiffs claim they were escorted to a trailer to sleep for two to three hours.

Plaintiffs allege that they were awoken by several armed guards who then placed them under arrest, handcuffing and blindfolding Vance and Ertel and pushing them into a humvee. Plaintiffs contend that they were labeled as "security internees" affiliated with SGS, some of whose members were suspected of supplying weapons to insurgents. According to Plaintiffs, that information alone was sufficient, according to the policies enacted by defendant Rumsfeld and others, for the indefinite, incommunicado detention of Plaintiffs without due process or access to an attorney. Plaintiffs claim to have been taken to Camp Prosperity, a United States military compound in Baghdad. Plaintiffs allege that they were placed in a cage, strip searched, and fingerprinted. Plaintiffs assert that they were taken to separate cells and held in solitary confinement 24 hours per day.

After approximately two days, Plaintiffs claim they were shackled, blindfolded, and placed in separate humvees which took them to Camp Cropper. Again, Plaintiffs allegedly were strip searched and placed in solitary confinement. During this detention, Plaintiffs contend that they were interrogated repeatedly by military personnel who refused to identify themselves and used physically and mentally coercive tactics during questioning. All requests for an attorney allegedly were denied.

On or about April 20, 2006, Plaintiffs each received letters from the Detainee Status Board indicating that a proceeding would be held April 23rd to determine their legal status as "enemy combatants," "security internees," or "innocent civilians." The letter informed Plaintiffs they did not have a right to legal counsel at that proceeding. The letter also informed Plaintiffs

they would only be permitted to present evidence or witnesses for their defense if they were reasonably available at Camp Cropper. On April 22nd , Vance and Ertel allegedly each received a notice stating that they were "security internees." The letter informed Plaintiffs they had the right to appeal by submitting a written statement to camp officials. Both Vance and Ertel appealed, requesting each other as witnesses and their seized personal property as evidence.

On April 26, 2006, Plaintiffs allegedly were taken before the Detainee Status Board. Ertel and Vance claim they were not provided with the evidence requested, nor were they permitted to testify on the other person's behalf. Plaintiffs assert that they were not permitted to see the evidence against them or confront any adverse witnesses.

On May 17, 2006, Major General John Gardner authorized the release of Ertel, allegedly 18 days after the Board officially acknowledged that he was an innocent civilian. Vance's detention continued an additional two months, where he was continuously interrogated. On July 20, 2006, several days after Major General Gardner authorized his release, Vance was permitted to leave Camp Cropper. Neither Plaintiff was ever charged with any crime.

Plaintiffs initiated this lawsuit against Defendants for the alleged constitutional violations that occurred in Iraq by the unidentified agents of the United States as well as for the practices and policies enacted by Rumsfeld which allegedly authorized such actions by those agents. Count XIV of the Second Amended Complaint, the only claim brought directly against the United States, seeks to invoke the Administrative Procedure Act ("APA") to order the United States to return certain property that Plaintiffs allege was confiscated from them by military personnel when they were arrested and detained in Iraq.

**DISCUSSION**

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1940 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct at 1940 (citing *Twombly*, 550 U.S. at 556). The complaint must be construed in a light favorable to the plaintiff and the court must accept all material facts alleged in the complaint as true. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 S.Ct at 1940 (citing *Twombly*, 550 U.S. at 555).

Additionally, a complaint must first describe the claim with sufficient detail as to "give the defendants fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint does not need to set forth all relevant facts or recite the law. Rather, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir. 1996).

## I.     The Record Does Not Support Applying the Military Authority Exception

The United States first argues that this Court lacks jurisdiction to order the return of Plaintiffs' property, a form of relief usually available under the APA. The United States supports its argument by relying upon 5 U.S.C. § 701(b)(1)(G), which it calls the "military authority exception." Specifically, although the APA allows for review of final agency actions, section 701(b)(1)(G) excepts military authority exercised in the filed during hostilities from the

definition of "agency action." It states as follows: "(b) For the purpose of this chapter... (1) `agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include ... (G) military authority exercised in the field in time of war or in occupied territory." *Id.*

We do not believe that the language of the statute indicates an intent to exempt the military as a whole or exempt all wartime military activities unrelated to armed conflict. See *Doe v. Sullivan*, 938 F.2d 1370, 1381 (D.C. Cir. 1991) (finding that the "military authority" exception did not apply to suit challenging a regulation permitting DoD to use unapproved investigational drugs on service member stationed in Saudi Arabia during the Persian Gulf War). Accordingly,  courts have recognized that any inquiry into the application of the "military authority" exception necessarily is "fact intensive." *See, e.g., Rosner v. United States*, 231 F. Supp. 2d 1201, 1218 (S. D. Fla. 2002). To that end, courts evaluate the nature of the alleged wrongful acts as well as the nature of the perpetrator in deciding whether the challenged action was taken by the military in the field and during wartime. *Id.*

Further, when such information is not available on the record before the court, many courts have denied a motion to dismiss pending discovery. *See Rosner v. United States*, No. 01-1859, 2002 WL 31954453, *2-3 (S.D. Fla. Nov. 26, 2002).

The United States first argues that the "in the field" requirement for the military exception applies because Plaintiffs' challenge is to the seizure of their property. However, it appears that  Plaintiffs have not challenged the initial seizure of their property, but rather the United States' decision not to return it when asked to do so.  Case law underscores the distinction between the initial seizure and the failure to return property. *See, e.g., Jaffee v. United States*, 592 F.2d 712, 720 (3rd Cir. 1979).  Plaintiffs are contesting the United States' refusal to return their property years after it was seized; the decision not to return it now is not inherently an exercise of authority from the field of battle.  Plaintiffs and the United States have submitted conflicting evidence about the allegedly seized property, its location, and its return.  We believe that further discovery is needed to sort out the details.

Second, and relatedly, it is not clear (and there are no facts in the record) that a commander in the field is causing the refusal to return Plaintiffs' property, another fact-specific question that the courts have found to be determinative. For example, in *Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 129 (D.D.C. 2003), the court found that the "military authority" exception did not apply where Defendant Rumsfeld (and not commanders in the field) ordered

military members in Afghanistan and Iraq to be vaccinated. There is no evidence in the record as to who has directed the failure to return the property.

Third, there is no evidence to suggest where Plaintiffs' property is and whether some or all of Plaintiffs' property is outside of the military's possession. As Judge Keys found, if discovery demonstrates that Plaintiffs' property has been transferred to a non-military agency or is no longer in the field, then the APA's "military authority" exception would not apply. *Vance v. Rumsfeld*, 2007 WL 455782, at *8.

In this case, Magistrate Judge Keys previously found that the record does not contain sufficient facts to demonstrate whether the military authority exception applies, and we agree with that decision. Accordingly, the United States' motion to dismiss on the basis of the military authority exception is denied at this time pending discovery on the matter. We affirm the discovery ruling made by Magistrate Judge Keys on this issue.

II.      **Plaintiffs' APA Claim is Not Mooted by the United States' Affidavit**

The United States also argues that there is no jurisdiction over the Plaintiffs' APA claim because that claim is moot. We disagree.

The United States claims that it has returned all of Plaintiffs' property that can be found -- one item among many. To support its claim, the United States has attached the affidavit of Lt. Melson, which details the alleged search that the United States undertook after this Complaint was filed and the Evidence/Property Custody Documents ("Property Documents") that Plaintiffs received upon their release from Camp Cropper. However, we find that neither the affidavit nor the Property Documents render Plaintiffs' APA claim moot at this time.

Plaintiffs raise numerous valid points about the adequacy of the search performed by Lt. Melson. Plaintiffs also point out numerous discrepancies in the Property Documents. These distinctions pointed out by Plaintiffs raise some doubt as to the reliability of the United States' proofs, precluding reliance on them to demonstrate that this case is moot. We believe that discovery on these issues is necessary to resolve the discrepancies. Therefore, we find that Plaintiffs case is not moot at this point and that Plaintiffs should be given the opportunity for discovery on this matter to investigate further.

III.     **Plaintiffs Have Properly Pled Their APA Claim**

Finally, the United States argues that Plaintiffs have not properly pled their APA claim. We disagree.

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus. "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*.--- U.S. --- . 127 S. Ct. 2197, 2200 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. ---, 127 S. Ct. 1955. 1964 (2007)). There is no requirement of heightened pleading for an APA claim.

We find that Plaintiffs' Complaint properly pleads an APA claim. In their Second Amended Complaint, Plaintiffs spell out the manner in which their property was taken, the types of property they are seeking returned, their attempts to regain control over their property from the United States Army and the Department of Justice ("DOJ"), and the Army's and DOJ's refusal to return the same. .

Nonetheless, according to the United States, Plaintiffs have not alleged sufficient facts to show agency action in their Complaint. We disagree. "Agency action" is defined to include "the whole or part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). In this case, Plaintiffs allege agency action in the form of the Army's ruling as well as the DOJ's failure to return Plaintiffs' property. Specifically, Plaintiffs alleged that they petitioned the Army for their property but the Army refused to return it. In addition, Plaintiffs allege that they have tried to secure the return of their property from the DOJ, but DOJ has stated that the government does not intend to return any of their property. These allegations are sufficient to put the United States on "notice" of what agency action Plaintiffs complain. Cf. *Khelashvili v. Dorchoff*, No. 07-2826.2007 WL 4293634, *3 (N.D. Ill. Dec. 6. 2007). Plaintiffs' allegations are clear.

Additionally, the United States argues that Plaintiffs' pleading is insufficient because it fails to articulate a discrete search that the Army should have performed. Of course, such detailed allegations are not required to be pled in Plaintiffs' Complaint. See *Bell Atlantic*, 127 S. Ct. At 1964 ("a complaint ... does not need detailed factual allegations"). To the contrary, requiring that level of detail is neither appropriate nor logical at this stage: Information regarding where the United States should have searched for Plaintiffs' property is uniquely within the control of the United States. *Cf. Bd of Trustees. Sheet Metal Workers' Nat. Pension Fund v. Illinois Range, Inc*.,186 F.R.D. 498, 504 (N.D. Ill. 1999) ("in that all of the information as to the transactions and the purpose behind them is in the hands of the Individual Defendants, it cannot be expected that Plaintiff could provide any additional information in its complaint."); *D 56. Inc. v. Berry's Inc*., No. 95-5992, 1996 WL 252557, at * 11 (N.D. Ill. May 10,

1996) (allegedly missing detail was "information which the plaintiff should not be required to know at this point, but rather something that defendants' answer and pre-trial discovery will hopefully reveal").

For these reasons, we find that Plaintiffs have properly their APA claim.

## **CONCLUSION**

For the foregoing reasons, we deny the motion of the United States of America to dismiss [# 120]. The United States' objections to Magistrate Judge Keys' order are denied [# 94]

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: July 29, 2009