IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD VANCE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 06 C 6964 |
| ) | |
| DONALD RUMSFELD, et al., ) | Judge Andersen |
| ) | Magistrate Judge Keys |
| Defendants. ) | |

**UNITED STATES' MOTION TO CERTIFY INTERLOCUTORY APPEAL**

Pursuant to 28 U.S.C. § 1292(b), defendant, the United States, respectfully requests the Court to certify for interlocutory appeal a portion of its Order and Memorandum Opinion and Order of July 29, 2009 (Docket Nos. 163, 164), denying the United States' motion to dismiss (Docket No. 120-2).

**INTRODUCTION**

Now that co-defendant, former Secretary of Defense Donald Rumsfeld, has appealed that part of the Court's opinion denying his own motion to dismiss, see Vance v. Rumsfeld, No. 06-6964, 2010 WL 850173 (N.D. Ill. Mar. 5, 2010) ("Vance II"), the Court should certify for interlocutory appeal a portion of its separate opinion denying the United States' motion to dismiss Count XIV of plaintiffs' second amended complaint ("SAC"), see Vance v. Rumsfeld, No. 06-6964, 2009 WL 2252258 (N.D. Ill. July 29, 2009) ("Vance I"). Specifically, the United States requests certification of the Court's ruling that Count XIV, which is brought under the Administrative Procedure Act ("APA"), see 5 U.S.C. § 701 et seq., and is the only claim alleged

against the United States, is not barred by the APA's military authority exception, see id. § 701(b)(1)(G). See Vance I, 2009 WL 2252258, at *3-5.

As explained below, certifying that issue is appropriate because it "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal" from that part of Vance I would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Doing so would allow the Seventh Circuit on a single, consolidated appeal to either dispose of the entire case or determine which of plaintiffs' claims may proceed, so that any discovery in this case can proceed in an efficient manner. Certifying an interlocutory appeal also would not only save the Court from making an unnecessary ruling on the United States' pending motion to dismiss or, in the alternative, for summary judgment (Docket No. 182), but it would eliminate the prospect of the APA claim "proceed[ing] forward and then ultimately be[ing] reversed because the Seventh Circuit determined [the Court] did not possess subject matter jurisdiction over [Count XIV] in the first place." SEC v. Buntrock, No. 02-218, 2003 WL 260711, at *3 (N.D. Ill. Feb. 3, 2003) (Andersen, J.).

## BACKGROUND

Plaintiffs, Donald Vance and Nathan Ertel, are two United States citizens who were working in Baghdad's "Red Zone" as civilian contractors for a privately-owned Iraqi security services company when they were detained by United States military forces in April 2006 on suspicion of distributing weapons and explosives to terrorist, insurgent, or criminal groups and of receiving stolen weapons from coalition forces. See SAC ¶¶ 24-25, 28-39, 135, 138, 179-80, Exhs. A & B. As part of their detentions, plaintiffs allege that "military personnel seized all of [their] personal property," including "their personal laptop computers, Mr. Ertel's cell phone and Mr. Vance's digital and video cameras . . . ." Id. ¶ 127.

Seeking the return of their seized property, plaintiffs included in their second amended complaint a single count against the United States under the APA. See id. ¶¶ 381-87. They allege (without specifying when or how) that they "tried to secure the return of their property . . . by petitioning the United States Army . . . and by working with the United States Department of Justice." Id. ¶ 383. Although plaintiffs admit that plaintiff Vance's laptop computer has been returned, they claim that the Army "refused to produce" their other property and that the Department of Justice ("DOJ") has said "the government does not intend to return any other property." Id. ¶¶ 383-84.[1] Characterizing the Army's "ruling" and DOJ's "statement" as "final agency actions" that were arbitrary and capricious, plaintiffs have asked the Court to order the United States to "return [] all of [their] personal property including computers, other electronics, and the data included therein." Id. ¶ 384 & p. 79 ("Wherefore" clause).

The United States filed a motion to dismiss plaintiffs' APA claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It raised three principal arguments in support of that motion: (1) that the Court lacked subject matter jurisdiction because (a) the military authority exception to the APA preserved the United States' sovereign immunity from judicial review and (b) plaintiffs' APA claim was moot; and (2) that plaintiffs had failed to sufficiently allege "final agency action" under the APA. See Docket No. 120-2. The Court rejected each of those and denied the United States' motion to dismiss. See Vance I, 2009 WL 2252258, at *3-6.

---

[1] As described in the briefs supporting its motion to dismiss, the United States conducted an exhaustive and comprehensive search for plaintiffs' property after this suit was filed. During that search the United States found and returned plaintiff Vance's laptop computer to his counsel. It also uncovered receipts that both plaintiffs, upon their respective releases from custody, had signed for the return of certain personal effects found on their persons when they arrived at Camp Cropper. That property consisted of clothing, jewelry, passports, and other miscellaneous items. Thus, the only pieces of property that the United States could not locate and that plaintiffs claim have not been returned are a cell phone and two cameras. See Docket Nos. 120-2 at 9-11 & Exh. A; No. 131 at 9-12.

The Court subsequently granted in part and denied in part defendant Rumsfeld's motion to dismiss the three counts alleged against him in an opinion issued last month, on March 5, 2010. Specifically, it dismissed Counts II and III but denied the motion as to Count I. With respect to the latter, the Court rejected the argument that the circumstances surrounding plaintiffs' detentions and alleged mistreatment in a foreign war zone constitute "special factors" that foreclose an implied cause of action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See Vance II, 2010 WL 850173, at *14-18. It also found that defendant Rumsfeld was not entitled to qualified immunity on Count I. See id., at *8-14. Because the Supreme Court has held that a district court's denial of qualified immunity and determination of whether to recognize a Bivens cause of action at all are both subject to an immediate interlocutory appeal, see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1945-47 (2009); Wilkie v. Robbins, 551 U.S. 537, 549 n.4 (2007); Mitchell v. Forsyth, 472 U.S. 511, 524-30 (1985), defendant Rumsfeld filed a timely notice of appeal with the Court on March 19, 2010, indicating that he is appealing to the United States Court of Appeals for the Seventh Circuit that portion of Vance II denying his motion to dismiss. See Docket No. 218. That appeal has been docketed and a deadline of May 24, 2010, has been set for defendant-appellant Rumsfeld's opening brief. See Vance v. Rumsfeld, No. 10-1687 (7th Cir.) (appeal docketed Mar. 22, 2010).

## DISCUSSION

A district court may certify for interlocutory appeal an order that is not otherwise appealable when the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Seventh Circuit has summarized the statutory criteria for granting a § 1292(b) petition as follows: (1) "there

must be a question of law," (2) "it must be controlling," (3) "it must be contestable," and (4) "its resolution must promise to speed up the litigation." Ahrenholz v. Bd. of Trs. of Univ. of Illinois, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis omitted). There is also one non-statutory consideration: a request for certification "must be filed in the district court within a reasonable time after the order sought to be appealed." Id. (emphasis omitted).

As noted above, the United States requests certification as to only that part of Vance I addressing the APA's military authority exception.[2] It specifically asks the Court to certify the following single question for interlocutory appeal: whether the plain language of the military authority exception, which prohibits judicial review of "military authority exercised in the field in time of war or in occupied territory," 5 U.S.C. § 701(b)(1)(G), preserves the United States' sovereign immunity and thereby acts as a subject matter jurisdiction bar to an APA claim for the return of property seized by the United States military in Iraq during wartime. Below the United States explains why this question easily meets all of the criteria for certification under § 1292(b). See Ahrenholz, 219 F.3d at 676 (stating that all five criteria must be met).

**1.    The Question Proposed For Certification Presents A Question Of Law**

A "question of law" for purposes of § 1292(b) is one that is "suitable for determination by an appellate court without a trial record." Ahrenholz, 219 F.3d at 677; see id. (describing "question of law" as "something the court of appeals could decide quickly and cleanly without having to study the record"). The question posed above falls squarely within that definition.

---

[2] Although the United States respectfully disagrees with the Court's analysis of all three grounds advanced in its motion to dismiss, it seeks certification only as to the Court's ruling on the military authority exception. As such, this motion to certify should not be construed as a waiver of, and the United States reserves, its right to appeal at an appropriate time the Court's ruling on the remaining two grounds addressed in Vance I.

Determining whether the military authority exception applies to this case is nothing more than an exercise of statutory interpretation that requires only a familiarity with plaintiffs' APA claim as pled. It is undisputed—because plaintiffs themselves have alleged—that "<u>military personnel</u> seized" their property, in connection with their detentions on suspicion of aiding insurgents in Iraq. SAC ¶ 127 (emphasis added); <u>see id.</u> ¶¶ 135, 138, 179-80, Exhs. A & B. Likewise, neither plaintiffs nor the Court has ever suggested that such seizure did not constitute "military authority exercised in the field in time of war or in occupied territory," 5 U.S.C. § 701(b)(1)(G). As a result, an appellate court can "quickly and cleanly" decide, "without having to study the record," <u>Ahrenholz</u>, 219 F.3d at 677, whether the military authority exception precludes an APA claim for the return of property seized by the military during wartime. <u>See Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.</u>, 291 F.3d 1000, 1007-08 (7th Cir. 2002) (finding district court properly certified for interlocutory appeal three issues concerning the application of various statutes to the facts as alleged); <u>Ahrenholz</u>, 219 F.3d at 676 (stating that "question of law" under § 1292(b) refers to a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine").

That question is one of law notwithstanding the Court's conclusion that the "record does not contain sufficient facts to demonstrate whether the military authority exception applies." <u>Vance I</u>, 2009 WL 2252258 at *5. The United States respectfully contends that, on the basis of plaintiffs' allegations alone, the exception does apply given that the seizure is clearly encompassed by the statutory provision and that further factual inquiry is therefore neither necessary nor appropriate. That is the issue that will be presented to the Seventh Circuit and it is an abstract legal question that the court of appeals properly can decide without a factual record.

### 2. The Question Proposed For Certification Is Controlling

The Seventh Circuit has adopted a "flexible" standard to determine if a question of law is "controlling." Johnson v. Burken, 930 F.2d 1202, 1206 (7th Cir. 1991). In general, though, a question of law "may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc., 86 F.3d 656, 659 (7th Cir. 1996). Because the question posed by the United States for certification under § 1292(b) goes directly to the Court's subject matter jurisdiction, it is undeniably "controlling." As this Court itself has held when certifying for interlocutory appeal the denial of a motion to dismiss for lack of subject matter jurisdiction:

> Federal courts are courts of limited jurisdiction. See Hay v. Indiana State Bd. of Tax Comm'rs., 312 F.3d 876, 878 (7th Cir. 2002). They may exercise jurisdiction only over matters authorized by the Constitution and by statute. See Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1316 (7th Cir. 1997). If the procedural requirements of a statute under which a party seeks to invoke a federal court's jurisdiction are not satisfied, then the court logically does not have subject matter jurisdiction to consider the case.
>
> . . . If the Seventh Circuit decides to accept this interlocutory appeal and concludes that our jurisdictional ruling was incorrect, then this case will be dismissed. Therefore, we find that the issues presented for interlocutory appeal are controlling questions of law.

Buntrock, 2003 WL 260711, at *2 (Andersen, J.). That same analysis applies here.

The argument that the military authority exception applies to plaintiffs' APA claim in this case raises a question of sovereign immunity and the Court's corresponding lack of subject matter jurisdiction over the United States. See Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 260-61 (1999) (recognizing that APA provides limited waiver of United States' sovereign immunity as to "relief other than money damages") (internal quotations and citation omitted); FDIC v. Meyer, 510 U.S. 471, 475 (1994) (holding that "[s]overeign immunity is jurisdictional in

-7-

nature" and that the "terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit") (internal alterations, quotations, and citation omitted). And because the APA claim is the only claim against the United States in this case, reversal of the Court's ruling on the military authority exception would mean that the United States would be dismissed as a party-defendant for lack of subject matter jurisdiction. The question proposed for certification concerning the military authority exception is therefore a "controlling" question of law. See Sokaogon, 86 F.3d at 659 (finding that application of sovereign immunity is controlling); Buntrock, 2003 WL 260711 at *2 (finding that question concerning court's subject matter jurisdiction is controlling); In re Brand Name Prescription Drugs Antitrust Litigation, No. 94-897, 1996 WL 732834, *2 (N.D. Ill. Dec. 18, 1996) (same).

### 3. The Question Proposed For Certification Is Contestable

An issue is "contestable" within the meaning of § 1292(b) if there is a "substantial ground for difference of opinion" on the question presented. 28 U.S.C. § 1292(b). This means it has not been "settled by controlling authority." In re Brand Name Prescription Drugs Antitrust Litigation, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995) (internal quotations and citations omitted).

The question presented here again is whether, as the United States contends, the military authority exception bars plaintiffs' APA claim on the basis of the plain language of that provision and the face of plaintiffs' complaint. To repeat, there has never been a debate in this case that the seizure of plaintiffs' property by military personnel as part of an effort to "rescue" plaintiffs inside Baghdad's Red Zone during a time of active combat operations in Iraq, in connection with the military's investigation into whether plaintiffs were aiding insurgents, constituted an exercise of "military authority" that occurred "in the field" during a "time of war." 5 U.S.C.

§ 701(b)(1)(G). Plaintiffs' claim for the return of property seized under such circumstances thus directly implicates the APA's military authority exception.

In concluding otherwise, this Court in Vance I relied principally on a distinction pressed by plaintiffs between the initial seizure of their property and their current request for its return. Vance I, 2009 WL 2252258, at *5. The United States respectfully submits that such a distinction is not supported by the sparse case law interpreting the military authority exception (nor is it contained within the statute itself). There is certainly no controlling Supreme Court or Seventh Circuit precedent on the application of the military authority exception to an APA claim for the return of property seized by the military during wartime. The only case of which the United States is aware that even comes close to addressing that issue is Rosner v. United States, 231 F. Supp. 2d 1202 (S.D. Fla. 2002). Although this Court relied on Rosner in denying the United States' motion to dismiss, the question in Rosner was whether the seizure (i.e., not the return) of the plaintiffs' property was effectuated pursuant to a military or non-military function, Rosner, 231 F. Supp. 2d at 1211-12, 1217-18—unlike here, where the seizure indisputably occurred pursuant to a military function. The clear import of Rosner is that an APA claim for the return of property would be barred by the military authority exception to the extent the military's seizure of that property occurred during active hostilities. See id. at 1211-12 & n.14 (noting plaintiffs alleged that the "actual taking of the . . . property occurred after hostilities had ceased and peace was formally declared") (emphasis added); Docket No. 120-2 at 6-7; Docket No. 131 at 7-9. This Court also cited Jaffee v. United States, 592 F.2d 712 (3d Cir. 1979), as "underscor[ing] the distinction between the initial seizure and the failure to return property," Vance I, 2009 WL 2252258, at *4, but Jaffee did not even involve the seizure of property, let alone distinguish between seizure and return.

The other reasons the Court gave for denying the United States' motion to dismiss were its statement that "<u>any</u> inquiry into the application of the 'military authority' exception <u>necessarily</u> is 'fact intensive,'" in support of which it cited only <u>Rosner</u>, and its related suggestion that discovery is required on various topics to determine whether the exception applies to this case. <u>Id.</u> (emphasis added). Respectfully, <u>Rosner</u> does not stand for the broad generalization that "any" invocation of the military authority exception is "necessarily" fact intensive, as the complaint in that case contained credible allegations that the particular seizure there was non-military in nature. <u>Rosner</u>, 231 F. Supp. 2d at 1217-18. Here, in contrast, plaintiffs' allegations concerning the seizure of their property in Iraq plainly and unquestionably involve "military authority exercised in the field in time of war or in occupied territory." 5 U.S.C. § 701(b)(1)(G). No discovery could change that fact. Nor could it change the fact that those allegations are a significant, if not the essential, part of plaintiffs' APA claim <u>as pled</u>. Indeed, plaintiffs themselves have admitted that ruling on their APA claim would require the Court to ascertain "in the first instance" if the military's seizure of their property inside Baghdad's Red Zone during active combat operations was lawful under the circumstances. Docket No. 127 at 13 n.9; <u>see</u> Docket No. 131 at 8.

In light of the foregoing, there is a "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), on whether the military authority exception precludes plaintiffs' APA claim as a matter of law. That issue is not settled by any controlling authority and what little case law there is tends to support the United States' position.[3]

---

[3] This conclusion is bolstered by several habeas corpus cases indicating that the military authority exception applies, without first requiring any discovery, to preclude APA actions brought by alien detainees at Guantanamo Bay. <u>See</u>, e.g., <u>Basardh v. Obama</u>, 612 F. Supp. 2d 30, 33 n.9 (D.D.C. 2009); <u>In re Guantanamo Bay Detainee Cases</u>, 355 F. Supp. 2d 443, 480-81 (D.D.C. 2005), <u>rev'd on other grounds by</u> <u>Boumediene v. Bush</u>, 128 S. Ct. 2229 (2008); <u>Rasul v.</u>

### 4. The Question Proposed For Certification Would "Materially Advance The Ultimate Termination Of The Litigation"

Resolution of the issue proposed for certification unmistakably would "speed up the litigation," Ahrenholz, 219 F.3d at 675 (emphasis omitted), both with respect to the United States in particular and with respect to the case as a whole. As discussed above, a decision in the United States' favor would result in its dismissal from the case entirely. See Buntrock, 2003 WL 260711, at *3 ("If the Seventh Circuit reverses our decision regarding subject matter jurisdiction, then the case will have to be dismissed. Accordingly, it makes much more sense for these issues to be addressed by the Seventh Circuit now, as opposed to at the conclusion of the lawsuit.").

More broadly, an interlocutory appeal by the United States would allow the Circuit Court to address all claims against all parties at the same time. Now that defendant Rumsfeld has filed a notice of appeal, allowing the United States to file a tandem appeal would promote judicial efficiency, as the Seventh Circuit then could address the sole remaining claims against those two defendants simultaneously. That is especially significant because defendant Rumsfeld's special factors argument (which will be one of the issues before the Seventh Circuit on his appeal) and the United States' argument based on the military authority exception both raise similar separation-of-powers concerns about the judiciary's well-established reluctance to interfere in military operations, national security, and foreign affairs. Compare Docket No. 135 at 6-16 (defendant Rumsfeld's motion to dismiss) and Docket No. 158 at 3-17 (defendant Rumsfeld's reply brief in support of motion to dismiss) with Docket No. 120-2 at 4-7 (United States' motion to dismiss) and Docket No. 131 at 3-9 (United States' reply brief in support of motion to

---

Bush, 215 F. Supp. 2d 55, 64 n.11 (D.D.C. 2002), rev'd on other grounds by Al Odah v. United States, 103 Fed. App'x 676 (D.C. Cir. 2004); accord Al Odah v. United States, 321 F.3d 1134, 1149 (D.C. Cir. 2003) (Randolph, J., concurring), rev'd on other grounds by Rasul v. Bush, 542 U.S. 466 (2004)

dismiss). Were the United States and defendant Rumsfeld to file concurrent appeals, the appellate court could address those concerns in one opinion, rather than in the piecemeal fashion that would happen if the Court denied the United States' certification request.

It also "would be a substantial waste of not only this Court's judicial resources," but those of the parties as well, if the claim against the United States "were to proceed forward and then ultimately be reversed because the Seventh Circuit determined [the Court] did not possess subject matter jurisdiction over [that claim] in the first place." Buntrock, 2003 WL 260711, at *3. As but one example, permitting an interlocutory appeal regarding the military authority exception would make it unnecessary for the Court to rule on the United States' currently pending motion to dismiss or, in the alternative, for summary judgment (Docket No. 182). Doing so likewise would obviate burdensome and problematic discovery into plaintiffs' APA claim. See Vance I, 2009 WL 2252258 at *6; Docket No. 168.

As a result, were the Seventh Circuit to reverse the Court's adverse rulings as to the United States and defendant Rumsfeld, it would resolve the disputed issues in this case in their entirety on a single, consolidated appeal. That, in turn, would avoid a further waste of the Court's and the parties' resources on additional time-consuming, unnecessary, and burdensome discovery against the United States. The same efficiencies would be gained even if the Circuit Court did not overturn this Court's rulings, as combining defendant Rumsfeld's and the United States' appeals would allow the Seventh Circuit to decide which of the remaining claims should and should not go forward, and on which grounds, all of which would significantly streamline the proceedings on any potential remand to this Court. There thus can be no question that an interlocutory appeal by the United States regarding the application of the military authority exception to this case, in conjunction with defendant Rumsfeld's pending appeal, present just the

type of "threshold questions" the resolution of which "now may materially advance the ultimate termination of the litigation." Burken, 930 F.2d at 1205; see, e.g., Estate of Escobedo v. City of Fort Wayne, No. 05-424, 2008 WL 4411485, *3 (N.D. Ind. Sept. 25, 2008) (certifying order for interlocutory appeal under § 1292(b) where doing so would "speed up the litigation because a number of claims in this case already are on appeal" and it therefore "would be more efficient for the appeals court to consider and decide from among all the claims in this case which claims should go to trial or be resolved as a matter of law now").

### 5. The United States' Motion To Certify Is Timely

The last consideration for certifying an interlocutory appeal under § 1292(b) (albeit not imposed by the statute itself) is that the request be filed within a "reasonable time after the order sought to be appealed." Ahrenholz, 219 F.3d at 675 (emphasis omitted). In light of the procedural posture of this case, the United States' motion to certify is timely.

The United States has demonstrated that a consolidated appeal by itself and defendant Rumsfeld would significantly "speed up the litigation," id. (emphasis omitted), and conserve judicial resources. See supra Section 4. Had it requested certification on any part of Vance I while the claims against defendant Rumsfeld remained pending, however, the argument that an interlocutory appeal by the United States alone would have "materially advance[d] the ultimate termination of the litigation," 28 U.S.C. § 1292(b), would have been much weaker, if not a dispositive reason for denying certification. Accordingly, and given the prudential concerns discussed above for an appellate court to consider defendant Rumsfeld's special factors argument and the United States' argument based on the military authority exception at the same time, see supra Section 4, it was reasonable and appropriate for the United States to wait until after the Court ruled on defendant Rumsfeld's motion to dismiss before filing its motion to certify.

With that in mind, government counsel in this case affirmatively sought to obtain a ruling on defendant Rumsfeld's motion to dismiss as expeditiously as possible. The undersigned, who represents both the United States and defendant Rumsfeld in his individual capacity in this action, filed on behalf of defendant Rumsfeld two separate motions to request a decision on his then-pending motion to dismiss, pursuant to Northern District of Illinois Rule 78.5: one on October 5, 2009, and another on February 26, 2010 (Docket Nos. 169, 207), after his dispositive motion had been fully briefed for approximately eight months and nearly thirteen months, respectively. (Plaintiffs actually opposed defendant Rumsfeld's first motion to request a decision and asked the Court to deny it. See Docket No. 171.)

Taken together, all of the circumstances of this case make the United States' request for certification timely. Knowing there would be a high likelihood of an interlocutory appeal by defendant Rumsfeld were the Court to deny any part of his motion to dismiss, it was, to repeat, appropriate for the United States to await the outcome of that motion before requesting certification. Government counsel used all available means and opportunities to request a prompt ruling on defendant Rumsfeld's motion to dismiss. The United States has filed its motion to certify just over one month from the date of Vance II (March 5, 2010), on the date set by the Court for filing this motion. See Docket No. 222. For all of these reasons, the United States' certification request has been made within a reasonable time after Vance I. See, e.g., City of Joliet v. Mid-City Nat'l Bank, No. 05-6746, 2008 WL 4889038, *3 (N.D. Ill. June 13, 2008) (finding certification petition timely when filed nine months, two months, and six weeks after the three orders at issue had been entered).[4]

---

[4] "It is equally important . . . to emphasize the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met." Ahrenholz, 219 F.3d at 677 (emphasis added). The United States has demonstrated throughout this brief that the four

**CONCLUSION**

For the reasons stated above, the United States respectfully requests that the Court grant its motion to certify and certify for interlocutory appeal to the United States Court of Appeals for the Seventh Circuit, pursuant to 28 U.S.C. § 1292(b), the following question: whether the APA's military authority exception, which prohibits judicial review of "military authority exercised in the field in time of war or in occupied territory," 5 U.S.C. § 701(b)(1)(G), preserves the United States' sovereign immunity and thereby acts as a subject matter jurisdiction bar to plaintiffs' APA claim for the return of property seized by the United States military in Iraq during wartime.

Respectfully submitted this 9th day of April, 2010,

| | |
|---|---|
| TONY WEST | PATRICK J. FITZGERALD |
| Assistant Attorney General, Civil Division | U.S. Attorney, Northern District of Illinois |
| | |
| TIMOTHY P. GARREN | ERIC S. PRUITT |
| Director, Torts Branch, Civil Division | Assistant U.S. Attorney |
| | 219 South Dearborn Street |
| MARY HAMPTON MASON | Chicago, IL 60604 |
| Senior Trial Counsel, Torts Branch, Civil Division | |

/s/ James R. Whitman
JAMES R. WHITMAN (D.C. Bar No. 987694)
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4169
Fax: (202) 616-4314

Attorneys for the United States

---

statutory criteria are met with respect to the question it has proposed for certification in this case. Because the timeliness of a certification request is a non-statutory criterion, see id. at 675, and because the United States has requested certification within a reasonable time in light of the procedural posture of this case, its motion to certify should be granted.