IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DONALD VANCE and NATHAN ERTEL, | ) | |
| | ) | 06 C 6964 |
| Plaintiffs, | ) | |
| | ) | Judge Andersen |
| v. | ) | |
| | ) | Magistrate Judge Keys |
| DONALD RUMSFELD, UNITED STATES OF | ) | |
| AMERICA and UNIDENTIFIED AGENTS, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## PLAINTIFFS' RESPONSE TO THE UNITED STATES' MOTION FOR CERTIFICATION

NOW COME Plaintiffs, DONALD VANCE and NATHAN ERTEL, by and through their attorneys, LOEVY & LOEVY, and hereby respond in opposition to the United States' Motion for Certification as follows:

### Introduction

In moving to certify for appeal a nine-month old decision by this Court denying the United States' motion to dismiss, the United States has mischaracterized the record and failed to demonstrate that its appeal would satisfy all five of the relevant criteria under 28 U.S.C. § 1292(b) and Ahrenholz v. Bd of Trustees of the Univ. of Illinois, 219 F.3d 674 (7th Cir. 2000). Although Plaintiffs argued and this Court found that Plaintiffs' Administrative Procedures Act ("APA") claim against the United States does not challenge the initial seizure of their property but rather the failure to return it in the four years since Plaintiffs were released from detention, the United States continues to assert that the only relevant inquiry is the seizure of Plaintiffs' property in Iraq. Because of that mischaracterization of Plaintiffs' challenge, the United States fails to appreciate that any determination of whether the "military authority" exception to the APA applies to this litigation is a fact-intensive and uncontestable question inappropriate for

interlocutory appeal. Certification, therefore, is not proper under 28 U.S.C. § 1292(b), and the United States' motion should be denied.

## Background

In 2006, Plaintiffs Nathan Ertel and Donald Vance were detained indefinitely and tortured in a military prison in Iraq. Dckt No. 116, Second Amended Complaint (hereinafter "SAC") ¶ 1. They were not charged with any crime nor had they committed any crime. Id. To the contrary, Plaintiffs were loyal United States citizens, who at great risk to their personal safety, had been reporting to stateside FBI agents on official corruption they witnessed in Iraq. Id. ¶¶ 18-19, 41-104. When the local United States officials who were implicated by these reports learned that Plaintiffs had been speaking to domestic law enforcement officers, they became angry and concerned about the details of what Plaintiffs had reported, and they retaliated against Plaintiffs in the most brutal way imaginable. Id. ¶¶ 19, 52-54, 132-37.

The officials falsely accused the Plaintiffs of treasonous acts and arrested them. Id. ¶¶ 132-37. The Plaintiffs were then confined for months, *incommunicado*, and in total isolation under a detention system in which Plaintiffs' interrogators deprived Plaintiffs of their most basic needs such as food, water and sleep, and tortured them to purportedly facilitate their unending interrogations about their reports to the FBI. Id. ¶¶ 143-76.

During Plaintiffs' unlawful arrest, all of Plaintiffs property, including their laptop computers, cellular phones, and digital and video cameras, was seized by United States officials. Id. ¶¶ 127, 382. Because their property would have proven their communications with the FBI and absolved them of any wrongdoing, Plaintiffs requested this evidence at their Detainee Status Board. Id. ¶ 183. That evidence, however, was never provided to them. Id. ¶ 184.

Upon their release, Plaintiffs again tried to secure the return of their property by petitioning the United States Army, but the Army refused to produce the same. Id. ¶ 383. So too with regard to the United States Department of Justice (hereinafter "DOJ"). The DOJ returned Mr. Vance's laptop computer but has stated that the government does not intend to return any other property to either Plaintiff. Id. ¶¶ 383-84. As a result, Plaintiffs brought the instant case against the United States under the APA seeking the return of their property. Id. ¶¶ 381-87.

**Procedural History**

Following the filing of Plaintiffs' APA challenge, the United States moved to dismiss Plaintiffs' Complaint alleging that Plaintiffs' cause of action was precluded by the "military authority exception," or alternatively, that Plaintiffs had not sufficiently alleged agency action. This Court denied the United States' motion to dismiss. With regard to the "military authority exception," this Court found that there was "no evidence to suggest where Plaintiffs' property is and whether some or all of Plaintiffs' property is outside the military's possession" or even, who is "causing the refusal to return Plaintiffs' property." Vance v. Rumsfeld, No. 06 C 6964, 2009 WL 2252258, at *4 (N.D. Ill. July 29, 2009). As such, any application of the "military authority exception" was premature, at best. Id. at *4-5. Additionally, this Court found that "Plaintiffs' Complaint properly pleads an APA claim." Id. at *5. Specifically, this Court ruled that Plaintiffs allegations of "agency action in the form of the Army's ruling as well as the DOJ's failure to return Plaintiffs' property" were sufficient to set forth a cause of action. Id. at *5.

Rather than answer Plaintiffs' Complaint, the United States filed another motion to dismiss and/or for summary judgment, again suggesting that the Court has no jurisdiction over Plaintiffs' APA claim because it was insufficiently pled. See Dckt Nos. 182 & 183. After that second bite at the apple was fully briefed before this Court, the United States filed a motion to

certify this Court's denial of its first motion to dismiss for interlocutory appeal  See Dckt Nos. 187, 188 & 215.

**Standard**

To prevail on its motion to certify this Court's July 29, 2009 decision for interlocutory appeal, the United States must satisfy five criteria:  "there must be a question of <u>law</u>, it must be <u>controlling</u>, it must be <u>contestable</u> . . . its resolution must promise to <u>speed up</u> the litigation . . . [and] the petition must be filed in the district court within a <u>reasonable time</u> after the order sought to be appealed."  <u>Ahrenholz</u>, 219 F.3d at 675 (emphasis in original).  These five criteria "are conjunctive, not disjunctive."  <u>Id</u>. at 676.  That is, "[u]nless <u>all</u> these criteria are satisfied, the district court may not and should not certify its order [to the Seventh Circuit] for an immediate appeal under section 1292(b)."  <u>Id</u>. at 676 (emphasis in original).

"Motions under 28 U.S.C. § 1292(b) should be granted sparingly and with discrimination, with certification being the exception, not the rule."  <u>Amoroso v. Crescent Private Capital, L.P.</u>, No. 02 C 1453, 2003 WL 22839807, at *2 (N.D. Ill. Nov. 26, 2003).  "[T]he party requesting interlocutory review carries the heavy burden of demonstrating 'that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  <u>Id</u>. (quoting <u>Fisons Ltd. v. United States</u>, 458 F.2d 1241, 1248 (7th Cir. 1972), <u>cert.</u> <u>denied</u> 405 U.S. 1041 (1972).

The United States has failed to show that this Court's July 2009 order raises a question of law, that it is contestable and controlling, that an interlocutory appeal would materially advance the litigation or that its motion for certification was timely filed.  Accordingly, the United States' motion must be denied.

### A. The United States' Request for Certification Does Not Contain a Question of Pure Law

Ahrenholz defined a "question of law" as a "'pure' question of law rather than merely an issue that might be free from factual contest." Ahrenholz, 219 F.3d at 677. To that end, a "question of law" is "something the court of appeals could decide quickly and cleanly without having to study the record . . . ." because it is "an abstract legal issue." Id. As this Court recognized in Gierum v. Kontrick, No. 01 C 4370, 2002 WL 226857 (N.D. Ill. Feb. 14, 2002), the denial of a motion to dismiss rarely presents a "pure question of law" suitable for interlocutory appeal. Id. at *3. "Rather, the trier of fact . . . must determine . . . in the context of a motion to dismiss, whether the complaint as filed states a claim upon which relief may be granted." Id. "In most cases," that finding does not "involve what the Seventh Circuit has identified as a 'pure question of law' or an 'abstract legal issue.'" Id.

Such is the case here: Whether the "military authority" exception to the APA applies in this case turns on facts that need to be developed in discovery. See Vance v. Rumsfeld, No. 06 C 6964, 2009 WL 2252258, at *5 (N.D. Ill. July 29, 2009). As this Court explained, "[i]n this case, Magistrate Judge Keys previously found that the record does not contain sufficient facts to demonstrate whether the military authority exception applies and we agree with that decision. Accordingly, the United States' motion to dismiss on the basis of the military authority exception is denied at this time pending discovery on the matter." Id.; see also Vance v. Rumsfeld, No. 06 C 6964, 2007 WL 4557812, at *7 (N.D. Ill. Dec. 21, 2007) ("In the instant case, Plaintiffs have argued that the APA military authority exception may not apply to certain unidentified defendants, if those defendants were not military personnel. Absent the requested discovery, however, it would be impossible for Plaintiffs to support such an argument.").

That ruling was sound. For example, the "military authority" exception applies only to authority "exercised in the field in time of war." 5 U.S.C. § 701(b)(1)(G). The decision to refuse to return Plaintiffs' property, as this court found, "is not inherently an exercise of authority from the field of battle." <u>Vance</u>, 2009 WL 2252258, at *4. Rather, during briefing on the United States' motion to dismiss, Plaintiffs submitted affirmative evidence suggesting that the Naval Criminal Investigative Service ("NCIS") may have some of Plaintiffs' property, and that that property was transferred to "non-field" locations such as Fort Drum, New York and nearby Rock Island. <u>See</u> Dckt No. 127. Similarly, this Court found that there was no evidence to suggest that a commander in the field is causing the refusal to return Plaintiffs' property. <u>Vance</u>, 2009 WL 2252258, at *4. Because "discovery is needed to sort out the details" of where Plaintiffs' property is located and who is causing the refusal to return it, this Court denied the United States' motion to dismiss and should likewise deny its motion for certification. <u>Vance</u>, 2009 WL 2252258, at *4 ("As Judge Keys found, if discovery demonstrates that Plaintiffs' property has been transferred to a non-military agency or is no longer in the field, then the APA's 'military authority' exception would not apply."). There is no "pure" question of law for the appellate court to address.

The United States' suggestion to the contrary is without merit. The United States argues that the proposed certification "is a question of . . . law notwithstanding the Court's conclusion that the 'record does not contain sufficient facts to demonstrate whether the military authority exception applies.'" Dckt No. 224, at 15. That is so, according to the United States, because regardless of where the property is located or who is controlling the decision not to return it, Plaintiffs' allegations regarding the <u>seizure</u> of their property occurred in Iraq by military personnel. <u>Id</u>. Plaintiffs, however, are not challenging the seizure of their property (<i>e.g.</i>, by

seeking damages for the value of the property or for the period of the loss of its use), but only the

United States' refusal to return the property upon a request by Plaintiffs. Vance, 2009 WL

2252258, at *4. "Case law underscores the distinction between the initial seizure and the failure

to return property." Id.[1]

Thus, because this Court has previously found that there are not sufficient facts in the

record to determine whether the "military authority" exception to the APA applies in this case,

there is no "pure question of law," which the Seventh Circuit can review. As a result, the United

States' motion for certification should be denied.

**B.     The United States' Request for Certification Does Not Contain a Question of
Law that is Contestable**

Although the failure of the United States to satisfy even one of the Section 1292(b)

criteria is sufficient to sound the death knell for its motion, there are additional bases on which

this Court should deny its motion for certification. In particular, the question of whether the

"military authority" exception applies at this juncture of the litigation is not contestable.

An issue of law is "contestable" if "the question is not settled by controlling authority and

there is a 'substantial likelihood' that the district court ruling will be reversed on appeal."

Amoroso, 2003 WL 22839807, at *2.[2] This is a two-part inquiry: "Where a controlling court of

---

[1]     Moreover, contrary to the United States' representation, all Plaintiffs alleged is that
"United States officials" took their property. See SAC ¶ 382. Because each of the persons with
whom the Plaintiffs interacted wore a sterilized uniform and did not identify themselves,
Plaintiffs do not know the names or identity of the persons who seized their property.

[2]     The United States only cites the first part of this two-part inquiry. See Dckt No. 224,
Def's Brief at 8 (defining an issue that is contestable by explaining that "[t]his means it has not
been 'settled by controlling authority.'"). Therefore, the United States has waived any
contention that there is a substantial likelihood that this Court's order will be reversed on appeal.
See 330 W. Hubbard Rest. Corp. v. United States, 203 F.3d 990, 997 (7th Cir. 2000) ("A party's
failure to address or develop a claim in its opening brief constitutes a waiver of that claim, for it
is not the obligation of this court to research and construct the legal arguments open to the

appeals has not decided an issue, it must still be demonstrated that a 'substantial likelihood' exists that the district court ruling will be reversed on appeal." In re Brand Name Prescription Drugs Antitrust Litig., 878 F. Supp. 1078, 1081-82 (N.D. Ill. 1995); see also NMHG Financial Servs., Inc. v. Wickes, Inc., No. 07 C 02962, 2007 WL 3087146, at *3 (N.D. Ill. Oct. 17, 2007) ("But the movant may not prevail by simply showing a lack of judicial precedent or that the issue is one of first impression.") (internal quotations and citations omitted); Hollinger Int'l, Inc. v. Hollinger Inc., No. 04 C 0698, 2005 WL 327058, at *3 (N.D. Ill. Feb. 3, 2005) ("The movant thus may not prevail by simply showing a 'lack of judicial precedent' or that the issue is one of first impression.").[3]

There is no substantial likelihood that this Court's well-reasoned decision will be reversed on appeal. To argue otherwise, the United States again mischaracterizes Plaintiffs' Complaint as one challenging the seizure of Plaintiffs' property rather than the failure of the United States to return the property upon a request. According to the United States, this distinction is not well supported in the law because Jaffee v. United States, 592 F.2d 712, 720 (3rd Cir. 1979), the case on which this Court relied, did not involve a dispute over property. See Dckt No. 224, Def. Brief, at 9.[4] To be relevant, however, Jaffee need not be factually identical to the dispute at hand. Rather, Jaffee's explanation of the distinction between the initial act (there,

---

parties, especially when they are represented by counsel.") (citations and internal quotation marks omitted). For that reason alone, the United States' motion for certification should fail.

[3]      Contestability can also be shown by demonstrating "substantial conflicting decisions regarding the claimed controlling issue of law." Amoroso, 2003 WL 22839807, at *2. There are, however, not a substantial number of decisions about the "military authority" exception, let alone decisions that conflict.

[4]      The mere fact that an issue may be one of "first impression" does not warrant a conclusion that a court's ruling on that issue is contestable. See NMHG Financial Servs., 2007 WL 3087146, at *3.

an order to witness the detonation of the atomic bomb) and the challenged, subsequent act (the

failure in the years following to warn of the medical risks from watching the detonation) is what

this Court found illuminating.  Vance, 2009 WL 2252258, at *4 ("Case law underscores the

distinction between the initial seizure and the failure to return property.").  On that score, Jaffee

reasoned:

> Even if the atomic explosion took place before July 27, 1953, the end of the Korean War .
> . . Jaffee's claims concern the Army's failure to act in the years since the explosion and
> not the order to witness the detonation.  This failure to act by the Army was neither in the
> field nor in time of war.

Jaffee, 592 F.2d at 720.  Similarly, as this Court found, "Plaintiffs are contesting the United

States' refusal to return their property years after it was seized; the decision not to return it now

is not inherently an exercise of authority from the field of battle."  Vance, 2009 WL 2252258, at

*4.[5]  As such, this Court's decision was well reasoned, supported by analogous case law and is

unlikely to be reversed on appeal.

Alternatively, the United States contends that this Court's opinion will be overturned by

the Seventh Circuit because Rosner v. United States, 231 F. Supp. 2d 1201 (S.D. Fla. 2002) does

not mandate discovery into the application of the "military authority" exception in every case.

See Dckt No. 224, Def's Brief, at 10.  That argument is a red-herring.  Even if Rosner did not

require a fact-intensive, case-by-case inquiry in every case in which the "military authority"

exception is raised as a defense, both this Court and Judge Keys found that such an inquiry – and

---

[5]      The United States alternatively contends that this Court should not have relied on Rosner
v. United States, 231 F. Supp. 2d 1201 (S.D. Fla. 2002) to support the distinction between the
seizure and the failure to return Plaintiffs' property.  See Dckt No. 224, Def's Brief, at 9.  With
all due respect, this Court simply did not do so.  Although the Court sought guidance from
Rosner on several of the issues involved in denying the United States' motion to dismiss, the
determination about whether the Complaint addressed the seizure or the failure to return
Plaintiffs' property was not one of them.

the attendant discovery required to conduct that inquiry – was necessary in this case.  See Vance, 2009 WL 2252258, at *5; Vance, 2007 WL 4557812, at *8.

The only basis that the United States offers for contesting the validity of those rulings is its repeated mischaracterization of Plaintiffs' claim as one contesting the seizure of Plaintiffs' property.  See Dckt No. 224, Def's Brief, at 10 ("Here, in contrast plaintiffs' allegations concerning the seizure of their property in Iraq plainly and unquestionably involve 'military authority exercised in the field in time of war or in occupied territory.'  5 U.S.C. § 701(b)(1)(G).  No discovery could change that fact.").  According to the United States, because "[n]o discovery could change" the fact that Plaintiffs' property was seized in Iraq, this Court's ruling denying the United States' motion to dismiss was in error.  But because, as Plaintiffs have pressed and this Court has found, the Plaintiffs' APA claim challenges only the failure of the United States to return Plaintiffs' property, the United States' arguments are without merit.  Thus, the United States has failed to show that its appeal from this Court's order would contestable, and the United States' motion for certification should therefore be denied.

C.      **Because the United States is Focused on the Seizure of the Property Rather than the Failure to Return the Property, the Question Posed Does not Represent a Controlling Question**

In addition, Section 1292(b) requires that the issue certified for appeal is controlling.

Here, the United States proposes to certify the following question for appeal:

> Whether the plain language of the military authority exception, which prohibits judicial review of "military authority exercised in the field in time of war or in occupied territory," 5 U.S.C. § 701(b)(1)(G), preserves the United States' sovereign immunity and therefore acts as a subject matter jurisdiction bar to an APA claim for the return of property seized by the United States military in Iraq during wartime.

Dckt No. 224, Def's Brief, at 5.  Because this question misframes the issue, it is not controlling.

Plaintiffs did not bring an APA claim for the seizure of their property by the United States and

10

this Court's opinion does not endorse such a claim. Rather, Plaintiffs' claim concerns the failure

of the United States to return the property long after the supposed seizure on the battlefield

occurred, and that failure to return forms the sole basis of this Court's opinion.

The United States cannot rewrite this Court's opinion (much less drag the case through an

interlocutory appeal and attendant stay) by posing an inapposite question. See Vill. of

Schaumberg v. St. Paul Mercury Ins. Co., No. 07 C 6654, 2009 WL 1409699, at *3 (N.D. Ill.

May 20, 2009) (finding the proposed question, which "misstates our holding," to be "irrelevant"

and therefore not certifiable).[6] Rather, just as this Court found, the issue is whether the "military

authority" exception applies to the United States failure to return Plaintiffs' property. Because

Plaintiffs do not know where that property is currently located or who is causing the failure to

return it, the operative question – *i.e.*, the one that would dictate subject matter jurisdiction –

cannot be put before the Seventh Circuit. The alternative question posed by the United States is

not controlling and therefore the United States' motion for certification must fail.

---

[6]     Moreover, the United States' proposed question assumes, without basis, that Plaintiffs'
property was seized by military personnel. Contrary to the United States' representations,
Plaintiffs do not know who seized their property; that is why the Plaintiffs have alleged that it
was taken by "United States officials," and why the Plaintiffs have sought discovery in this
action. See SAC ¶ 382 ("As described more fully above, Plaintiffs' property, including without
limitation their laptop computers, as well as their cell phones, digital and video cameras, and all
data stored therein, and other personal property, were taken by United States officials in violation
of the United States Constitution."). As Judge Keys found, Plaintiffs' APA claim would not be
extinguished by the "military authority" exception to the APA "if the district court determines
that the government's conduct was not military in nature, or if the unidentified actors were
private governmental contractors – like many of the allegedly politically-connected individuals
who were the subject of Plaintiffs reports to Agent Carlisle – who are not shielded by the APA's
military authority exception." Vance, 2007 WL 4557812, at *8; see also id. ("As such, it is
difficult to see how the district court can resolve Defendants' argument that the military authority
exception bars Plaintiffs' APA claim, without a more clear understanding of the individuals
involved in the complained of abuses."). Therefore, asking the Seventh Circuit to determine
whether this Court might be stripped of jurisdiction if the United States military seized Plaintiffs'
property is akin to seeking an advisory opinion and is not appropriate for interlocutory appeal.

### D.     Certification Will Not Materially Advance the Case

The final Section 1292(b) criterion is whether certification will "materially advance the ultimate termination of the litigation."  Contrary to the United States' assertion, certification of this issue for appeal will not streamline or speed up this litigation, but rather will only serve to delay this case and prohibit Plaintiffs from accessing in a timely fashion information critical for their claims.

"The Seventh Circuit has recognized that interlocutory appeals tend to cause unnecessary delays in proceedings and waste judicial resources." Abiola v. Abubakar, No. 02 C 6093, 2006 WL 2714831, at *4 (N.D. Ill. Sept. 20, 2006).  Accordingly, "the party seeking an interlocutory appeal must show that 'exceptional circumstances justify the departure from the basic policy postponing appellate review until after the entry of final judgment.'" Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (quoting Fisons Ltd. v. United States, 458 F.2d 1241, 1248 (7th Cir. 1972)).  No such exceptional circumstances have been demonstrated here.

Rather than litigate Plaintiffs' discrete (and narrow) claim against the United States, the United States has moved for certification of its first motion to dismiss.  That strategy will only serve to further delay the litigation of this case.  Just as in Abiola, "[t]his case is already four years old in this Court . . . The defendant has been given every opportunity to obtain dismissal of the case on procedural and legal grounds . . . At this point, it is time for the litigation to proceed ahead." Abiola, 2006 WL 2714831, at *3.

Moreover, delaying the case will have detrimental consequences for Plaintiffs' claims.  An appeal by the United States could lead to a stay in this case; indeed, the United States has moved for an order requesting as much.  See Dckt No. 226.  If Plaintiffs' case against the United States is stayed, Plaintiffs will be unable to identify and sue the as-of-yet unidentified defendants

12

before the clock runs out on their claims against those defendants.  This is particularly true because the United States is currently refusing to identify certain persons and refusing to provide judicial district information about where those persons can be found, <u>see</u> Dckt Nos. 205 & 234, based on their self-serving assertion that the filing of the Defendants' Motion to Stay and the United States' Motion for Certification indefinitely stays any proceedings in this litigation.  As a result, Plaintiffs know neither the names of certain unidentified defendants nor the locations in which any unidentified defendants can be found and properly sued.

In contrast, the efficiency gains and benefits that the United States asserts will inure from granting its motion to certify are not well taken.  On that score, the United States offers three primary claims.  First, according to the United States, because a decision in the United States' favor on appeal would result in its dismissal, certification "materially advances" the case.  Of course, those savings are realized only if the United States is right on the merits.  Otherwise, the burden on the judicial system would be doubled, if not potentially tripled.  <u>See</u> <u>Hedrich v. Pegram</u>, 154 F.3d 362, 368 (7th Cir. 1998) (interlocutory appeals are "disfavored" because they "frequently cause unnecessary delays in lower court proceedings and waste the resources of an already overburdened judicial system.  For these reasons, the preferred practice is to defer appellate review until the entry of a final judgment . . . .").  After an unsuccessful interlocutory appeal, this Court will have to rule on the United States' fully briefed second motion to dismiss, for which the United States could seek a second interlocutory appeal.  Additionally, at the close of the litigation, the parties would still have the right to pursue an appeal.  <u>See</u> <u>Freeman v. Kohl & Vick Mach. Works, Inc.</u>, 673 F.2d 196, 201 (7th Cir. 1982) ("federal law expresses strong policy against piecemeal appeals").  Such a course of action "would prolong the life of the

litigation at all the parties' expense, rather than streamlining the proceedings . . . ." <u>Abiola</u>, 2006 WL 2714831, at *3.

Second, the United States argues that permitting an interlocutory appeal will allow the Seventh Circuit to address all of the Plaintiffs' claims at the same time. If this were the criterion, then interlocutory appeals would become routine in any case involving qualified immunity because a separate defendant could piggyback along by simply arguing that the Seventh Circuit should take all of the defendants' objections together. The Seventh Circuit, however, is a court of limited jurisdiction and Section 1292(b) appeals are meant to be taken sparingly. <u>See</u> <u>Ahrenholz</u>, 219 F.3d at 676 ("The federal scheme does not provide for am immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court.") (citation omitted); <u>id</u>. ("Section 1292(b) was not intended to make denials of summary judgment routinely appealable."); <u>E.E.O.C. v. Dial Corp.</u>, No. 99 C 3356, 2001 WL 1945088, at *1 (N.D. Ill. Dec. 27, 2001) (interlocutory appeals are to "be granted sparingly and with discrimination").

The United States argues that this case is exceptional (and therefore not bound by the presumption that appeals should be taken only upon a final judgment) because both Defendant Rumsfeld's and the United States' claims allegedly involve similar separation of powers concerns regarding national security and foreign affairs. That argument, however, has no merit. To start, it is unclear why the mere fact that the United States' claim, like Defendant Rumsfeld's, <u>could</u> involve separation of powers concerns would somehow exempt it from the ordinary rules that apply to interlocutory appeals. Even if the United States' argument on that score were true, however, it is premature to conclude that Plaintiffs' APA claim involves separation of powers concerns at all: If Plaintiffs' property is no longer in the military's possession or "in the field," or if the refusal to return that property is being caused by a non-military employee then none of

14

the United States' purported separation of powers concerns apply. Finally, to the extent that the

APA claim and the claim against Defendant Rumsfeld for torture both involve separation of

powers concerns, the analysis of those concerns is wholly distinct. Plaintiffs' APA claim

involves the application of (currently undeveloped) facts to the analysis of a concrete statute –

the APA; Defendant Rumsfeld's arguments regarding the separation of powers and national

security revolve around "policy" concerns that this Court has rejected. See Vance v. Rumsfeld,

No. 06 C 6964, --- F. Supp. 2d ---, 2010 WL 850173, at *17 (N.D. Ill. March 5, 2010) ("Based

on the pleadings submitted and the backdrop of prior precedent, we are not convinced that

dismissing the claim of these two American citizens is a proper exercise of judicial authority.

Instead, we believe 'a state of war is not a blank check' for the President or high-ranking

government officials when it comes to the rights of the American citizens, and therefore, it does

not infringe 'on the core role of the military for the courts to exercise their own time-honored

and constitutionally mandated roles of reviewing and resolving claims like those presented

here.'"). Therefore, the analysis of separation of powers arguments in one arena – Defendant

Rumsfeld's qualified immunity appeal – will not necessarily impact the analysis in another – the

evaluation of the "military authority" exception to the APA.

      Third, the United States asserts that certification will streamline the case because it will

avoid burdensome and problematic discovery. The United States does not elaborate on how

discovery on Plaintiffs' discrete APA claim will be burdensome or problematic outside of the

government's say-so. Those types of non-specific assertions of burden are routinely rejected as a

basis to deny or limit discovery, see In re Aircrash Disaster Near Roselawn, Ind., 172 F.R.D.

295, 307 (N.D. Ill. 1997), and should fare no better here. Indeed, discovery on Plaintiffs' APA

claim is hardly challenging: It is a narrow claim for the return of Plaintiffs' property for which

appropriately tailored discovery will be manageable. Moreover, unless the United States is successful on appeal, discovery on this claim will have to be undertaken at some point and there is no reason for that discovery not to "proceed ahead." Abiola, 2006 WL 2714831, at *3.

Thus, the United States has failed to demonstrate that certification will advance the case. To the contrary, it will only further delay this litigation and eliminate Plaintiffs' ability to name and sue additional defendants for their misconduct.

### E.     The United States' Motion was Not Timely

Ahrenholz imposes a fifth factor for the courts to evaluate before they can grant a motion for certification; namely, the timeliness of the filing for interlocutory appeal. Here, the United States waited nearly nine months to file its motion for certification.

A Section 1292(b) petition must be filed within a "reasonable time after the order sought to be appealed." Ahrenholz, 219 F.3d at 675 (emphasis in original). Although the courts have not demarcated a set timeframe that is presumptively reasonable, the courts have held that filing a motion for interlocutory appeal even one month after the order sought to be appealed was issued is not reasonable. See Muniz v. Rexnord Corp., No. 04 C 2405, 2007 WL 257710, at *2 (N.D. Ill. Jan. 23, 2007) ("Corning's motion was not filed with a reasonable time after the order denying its motion to dismiss was issued. The order sought to be appealed was issued on November 2, 2006; Corning did not file its motion until December 11, 2006, over a month after the disputed order was issued. This time period was not reasonable); Abrams v. Van Kampen Funds, Inc., No. 01 C 7538, 2002 WL 1989401, at *1 (N.D. Ill. Aug. 27, 2002) (and cases cited therein) ("The two-month delay in seeking certification may be considered inexcusably dilatory. See Richardson, 202 F.3d at 958; Weir v. Propst, 915 F.2d 283, 286-87 (7th Cir. 1990); Fabricant v. Sears Roebuck & Co., 2001 WL 883303 at *1 (S.D. Fla. Jan 29, 2001); United States ex. rel.

N.E.W. Interstate Concrete, Inc. v. EUI Corp., 2000 WL 863039, at *3 (S.D. Ind. June 9, 2000). A § 1292(b) interlocutory appeal will not be certified.").

Here, the United States waited almost nine months – and after filing a second, successive motion to dismiss – before filing its motion for interlocutory appeal. Such a delay is clearly dilatory under Ahrenholz and its progeny. See Muniz, 2007 WL 255710, at *2; Abrams, 2002 WL 1989401, at *1.

According to the United States, it had to wait until Defendant Rumsfeld's motion to dismiss was ruled upon before filing a request to appeal,[7] but this is just a makeweight excuse for inexcusable delay. The two defendants are distinct and the claims against them do not overlap. Given this indisputable lack of commonality between the claims, the United States' current argument that it intentionally waited until after a ruling on Defendant Rumsfeld's qualified immunity so that its appeal would "materially advance" the litigation appears frivolous. See Dckt No. 224, Def's Brief, at 13. More likely, the United States did not contemplate a 1292(b) certification at all because none was proper, and it did not seize upon the strategy until it learned that the Court had denied Defendant. Rumsfeld's motion to dismiss.

Moreover, there is nothing special about Defendant Rumsfeld's unrelated appeal that warrants a deviation from the finding that waiting nine months to file a § 1292(b) motion is untimely. As described above, a single appeal does not conserve judicial resources or speed up the litigation unless the United States is right on the merits. And, given the discrete claims against the United States (for the return of property) and against Defendant Rumsfeld (for torture), there is no reason why an appeal from the two defendants had to be or should be linked. Indeed, a statutory analysis of whether the "military authority" exception applies and a review of

---

[7] Even then, however, the United States waited over a month to file its motion for certification. Under Muniz, that delay was unreasonable. 2007 WL 255710, at *2.

Defendant Rumsfeld's policy arguments regarding the separation of powers are neither similar nor inherently intertwined. Therefore, there was no reason for the United States to wait nine months to appeal the denial of its first motion to dismiss. As a result, the United States' filing is untimely and the United Stats' motion for certification should therefore be denied.

### Conclusion

Because the United States cannot satisfy even one, let alone all of the <u>Ahrenholz</u> factors for certification, the United States' motion should be denied.

Respectfully Submitted,


\_\_\_\_\_/s/Gayle Horn_____

Arthur Loevy
Jon Loevy
Michael Kanovitz
Russell Ainsworth
Gayle Horn
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607

### <u>CERTIFICATE OF SERVICE</u>

I, Gayle Horn, an attorney, certify that on April 29, 2010, I served the attached submission by electronic mail to counsel of record.

\_\_\_\_\_/s/Gayle Horn_____