IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD VANCE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 06 C 6964 |
| ) | |
| DONALD RUMSFELD, et al., ) | Judge Andersen |
| ) | Magistrate Judge Keys |
| Defendants. ) | |

**UNITED STATES' REPLY IN SUPPORT OF
ITS MOTION TO CERTIFY INTERLOCUTORY APPEAL**

Plaintiffs' opposition to the United States' motion to certify does nothing to refute the conclusion that all of the criteria (statutory and non-statutory alike) for certifying an interlocutory appeal of this Court's ruling regarding the military authority exception to the Administrative Procedure Act ("APA") are satisfied. This stems largely from plaintiffs' mistaken belief that the United States has focused solely on the seizure of their property, rather than the alleged failure to return it, and thus in their view has "pos[ed] an inapposite question." Pls. Resp. at 11. Yet in the same breath plaintiffs quote the actual question the United States has requested be certified:

> [W]hether the plain language of the military authority exception, which prohibits judicial review of "military authority exercised in the field in time of war or in occupied territory," 5 U.S.C. § 701(b)(1)(G), preserves the United States' sovereign immunity and thereby acts as a subject matter jurisdiction bar to an APA claim <u>for the return of property</u> seized by the United States military in Iraq during wartime.

<u>Id.</u> at 10 (quoting Mot. to Certify at 5) (emphasis added). Nowhere do plaintiffs dispute that this accurately describes their APA claim. And as the emphasized language makes clear, the United

States' statement of the issue presented for certification recognizes that the claim in dispute is one for the return of plaintiffs' property.

It is instead plaintiffs who, when analyzing the certification request, refuse to accept that their sole claim against the United States is "for the return of property seized by the United States military in Iraq during wartime." Id. (emphasis added).[1] By doing so, and by insisting that the nature of the property's seizure is irrelevant to an analysis of the military authority exception, plaintiffs essentially have assumed the conclusion—namely, that they are right on the law. Although we respectfully believe that the Court erred in adopting plaintiffs' position on this point, resolving such a dispute over a question of law is precisely why an interlocutory appeal should be certified in this case.

Whether the plain language of the military authority exception applies to plaintiffs' APA claim for the alleged failure to return property that, as pled, was seized pursuant to "military authority exercised in the field in time of war," 5 U.S.C. § 701(b)(1)(G), is "a question of the meaning of a statutory . . . provision," Ahrenholz v. Bd. of Trs. of Univ. of Illinois, 219 F.3d 674, 676 (7th Cir. 2000), and, as such, is exactly the type of issue that is appropriate for certification under 28 U.S.C. § 1292(b). It is all the more so in terms of having the court of appeals address

---

[1] Plaintiffs even suggest that they "do not know who seized their property" and determining that fact is the reason "why the Plaintiffs have sought discovery in this action." Pls. Resp. at 11. They further declare that the United States has "assume[d], without basis," that their "property was seized by military personnel." Id.; see id. at 7 n.2 (stating that "contrary to the United States' representation, all Plaintiffs alleged is that 'United States officials' took their property") (quoting second amended complaint ("SAC") ¶ 382). Compare that with the fact section of plaintiffs' second amended complaint, which expressly alleges: "The military personnel seized all of Plaintiffs' property . . . ." SAC ¶ 127 (emphasis added). And on the very same page of their complaint plaintiffs make plain that "[t]he military personnel" being referred to are the "United States military forces [who] came to . . . rescue [plaintiffs]." Id. ¶ 125 (emphasis added).

the issue before the parties, their counsel, and this Court expend significant resources litigating a claim that is (in the United States' view) beyond the Court's jurisdiction.

## DISCUSSION

The parties appear to agree on the general framework for analyzing a motion to certify under § 1292(b): that the certification request needs to satisfy four statutory criteria—it must present (1) a question of law that is (2) contestable and (3) controlling and (4) the resolution of which promises to speed up the litigation—and one "nonstatutory requirement" (of being timely filed). Ahrenholz, 219 F.3d at 675. But a point overlooked by plaintiffs is that it is "the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met." Id. at 677 (emphasis added). As explained below and in the United States' opening brief, all of the statutory criteria are met here; in addition, the United States' motion to certify is timely under the circumstances of this case.

### 1. The Question Proposed For Certification Presents A Question Of Law

"Courts must apply a statute as written when the language is plain and unambiguous." Manning v. United States, 546 F.3d 430, 433 (7th Cir. 2008) (holding that plain language of Federal Tort Claims Act ("FTCA") required vacatur of $6.5 million jury verdict plaintiff obtained on Bivens claims due to subsequent judgment in government's favor on related FTCA claim in same suit), cert. denied, 130 S. Ct. 552 (2009). Interpreting a statutory provision under a set of assumed facts is a quintessential question of law that is appropriate for a certified appeal. See Ahrenholz, 219 F.3d at 676; Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev., 291 F.3d 1000, 1007-08 (7th Cir. 2002); SEC v. Buntrock, No. 02-218, 2003 WL 260711, at *2 (N.D. Ill. Feb. 3, 2003) (Andersen, J.). According to their complaint, plaintiffs' APA claim is for the return of property seized by military personnel in a foreign war zone. See

SAC ¶¶ 124-27, 381-87. Whether the plain language of the APA's military authority exception bars such a claim is therefore a straightforward question of statutory construction that is "suitable for determination by an appellate court without a trial record." Ahrenholz, 219 F.3d at 677.

Rather than take issue with any part of that argument, plaintiffs misconstrue this Court's decision in Gierum v. Kontrick, No. 01-4370, 2002 WL 226857 (N.D. Ill. Feb. 14, 2002), as "recogniz[ing]" that "the denial of a motion to dismiss rarely presents a 'pure question of law' suitable for interlocutory appeal." Pls. Resp. at 5 (internal citation omitted). Nothing in that opinion even arguably "recognizes" such an illogical theory. To the contrary, the Court specifically noted that the issue sought to be certified in Gierum did not concern "the meaning of a 'statutory or constitutional provision, regulation, or common law doctrine.'" Gierum, 2002 WL 226857, at *3 (quoting Ahrenzholz, 219 F.3d at 676). When such a pristine legal issue is at stake, as it is here, certifying and accepting an interlocutory appeal is of course appropriate and courts routinely do so in the context of a motion to dismiss (or, what amounts to the same, a motion for judgment on the pleadings). See, e.g., Boim, 291 F.3d at 1007-08; United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605, 608 (7th Cir. 2000); Reiser v. Residential Funding Corp., 380 F.3d 1027, 1028 (7th Cir. 2004); Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip, 196 F.3d 818, 821-22 (7th Cir. 1999).

This Court's opinion in Buntrock is but another example, one that plaintiffs ignore throughout their opposition despite the United States relying on it repeatedly. See Mot. to Certify at 2, 7-8, 11-12. In that case this Court, after denying a motion to dismiss, certified the underlying question for interlocutory appeal specifically because it depended on whether the "procedural requirements of a statute" for invoking the Court's subject matter jurisdiction were met. Buntrock, 2003 WL 260711, at *2 ("There is little doubt that the issues presented in the

motion to dismiss with respect to the SEC's invocation of the 'duty officer rule' (Rule 43) are questions of law."). Here, either the military authority exception bars an APA claim for the return of property seized by the military in Iraq during wartime, regardless of what happened to the property afterwards, or it does not. See id. ("Either the authorization of the enforcement action by Commissioner Hunt was sanctioned by the SEC regulations or it was not. Similarly, the ratification of the enforcement action by the full SEC was either legally proper or it was not."). That is clearly something "the Court of Appeals will be able to analyze . . . without needing to study the developed record in this case." Id.[2]

### 2. The Question Proposed For Certification Is Controlling

Plaintiffs' attempt to dispute that the United States' proposed question is controlling also misses the mark. To be clear, plaintiffs do not contest either that the applicability of the military authority exception to their APA claim raises an issue of sovereign immunity going directly to the Court's subject matter jurisdiction, or that (as this Court held in Buntrock) questions of subject matter jurisdiction by their very nature are "controlling" for purposes of § 1292(b). See Mot. to Certify at 7-8; Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc., 86

---

[2] This conclusion is not affected in the least by plaintiffs' lengthy detours about the supposed necessity of discovery into their APA claim, all of which concerns the alleged failure to return their property after it was seized (but which plaintiffs notably have yet to request despite the Court giving them leave to do so more than nine months ago). See Pls. Resp. at 5-6, 9-10. The United States has asked the Court to certify the preliminary question of whether an APA claim for the return of property can proceed when it is undisputed that the seizure of that property falls squarely within the military authority exception. Although this Court implicitly found that such a claim can proceed, its suggestion that the "record does not contain sufficient facts to demonstrate whether the military authority exception applies" is directed only at the government's alleged failure to return plaintiffs' property, Vance v. Rumsfeld, No. 06-6964, 2009 WL 2252258, *5 (N.D. Ill. July 29, 2009) ("Vance I"), and is therefore relevant only if the United States' proposed question is answered in plaintiffs' favor on certification to the Seventh Circuit. The discovery that plaintiffs contemplate would have no bearing on that question, which presents an abstract question of law that the Seventh Circuit can resolve "without having to study the record." Ahrenholz, 219 F.3d at 677.

-5-

F.3d 656, 659 (7th Cir. 1996); Buntrock, 2003 WL 260711, at *2; In re Brand Name Prescription Drugs Antitrust Litig., No. 94-897, 1996 WL 732834, *2 (N.D. Ill. Dec. 18, 1996). For all intents and purposes, that should be the end of the analysis on this criterion.

Plaintiffs, however, reframe the issue as "whether the 'military authority' exception applies to the United States [sic] failure to return Plaintiffs' property" and then assert that such a question "cannot be put before the Seventh Circuit" until discovery is completed. Pls. Resp. at 11. This argument fails to recognize that the question actually proposed for certification is whether the exception bars a claim "for the return of property seized by the United States military in Iraq during wartime." Mot. to Certify at 5 (emphasis added). It also does not address the fact that the underlying seizure was indisputably the result of "military authority exercised in the field in time of war." 5 U.S.C. § 701(b)(1)(G).[3] Determining if the military authority exception applies in such circumstances, and thus strips the Court of subject matter jurisdiction over the United States, is plainly a "controlling" question of law. See Buntrock, 2003 WL 260711 at *2 ("If the Seventh Circuit decides to accept this interlocutory appeal and concludes that our

---

[3] Again, plaintiffs distort their APA claim by suggesting that the "United States' proposed question assumes, without basis, that Plaintiffs' property was seized by military personnel." Pls. Resp. at 11 n. 6 (emphasis added). As discussed above at note 1, plaintiffs specifically have alleged that "military personnel seized all of Plaintiffs' personal property." SAC ¶ 127. The Court, not surprisingly, has relied on those same allegations time and again, not only in its opinion denying the United States' motion to dismiss, but in other opinions as well. See Vance I, 2009 WL 2252258, at *1 ("Military personnel allegedly seized all of plaintiffs' personal property . . . ."); id. at *3 ("Count XIV . . . seeks to invoke the [APA] to order the United States to return certain property that Plaintiffs allege was confiscated from them by military personnel when they were arrested and detained in Iraq."); Vance v. Rumsfeld, No. 06-6964, 2010 WL 850173, *1 (N.D. Ill. Mar. 5, 2010) ("Vance II") ("Plaintiffs allege that military personnel seized all of their personal property . . . ."); Vance v. Rumsfeld, No. 06-6964, 2007 WL 2746845, *1 (N.D. Ill. Sept. 19, 2007) ("Military personnel allegedly seized all of plaintiffs' personal property . . . ."). It is thus plaintiffs, not the United States, who wish to "rewrite this Court's opinion." Pls. Resp. at 11.

jurisdictional ruling was incorrect, then this case will be dismissed. Therefore, we find that the issues presented for interlocutory appeal are controlling questions of law.").

### 3. The Question Proposed For Certification Is Contestable

The gist of plaintiffs' opposition in general and with respect to contestability in particular is that it is irrelevant that the seizure of their property is clearly encompassed by the military authority exception.[4] Plaintiffs continue to insist that the only pertinent inquiry is whether the government's alleged failure to return their property falls under the exception; they further point out that this Court apparently agreed with them. See Pls. Resp. at 8-10. The United States does not dispute that it is possible the Seventh Circuit may agree with plaintiffs as well. But there nevertheless remains a substantial ground for a difference of opinion on whether the exception applies to a claim for the return of property when it cannot be denied that the property at issue was seized pursuant to "military authority exercised in the field in time of war." 5 U.S.C. § 701(b)(1)(G).[5]

---

[4] As an aside, plaintiffs suggest that the motion to certify should be denied solely because the United States has not argued there is a "'substantial likelihood' that the district court ruling will be reversed on appeal." Pls. Resp. at 7 n.2 (quoting Amoroso v. Crescent Private Capital, L.P., No. 02-1453, 2003 WL 22839807, at *2 (N.D. Ill. Nov. 26, 2003)). With all due respect, such a formulation of the contestability criterion for certifying an interlocutory appeal is not supported by the language of the statute, which requires only that there be a "substantial ground for difference of opinion" on the question presented. 28 U.S.C. § 1292(b); see Buntrock, 2003 WL 260711, at *3 ("The third § 1292(b) factor requires an analysis of whether the issues presented for certification are contestable, or, in other words, that substantial grounds for a difference of opinion on the issues exist.") (emphasis added). The "substantial likelihood" standard also would appear to be illogical, as a court presumably would not rule a particular way on an issue if it thought there was a "substantial likelihood" that it would be reversed.

[5] Indeed, plaintiffs themselves have said that an analysis of their APA claim depends upon the Court deciding "in the first instance" if the seizure of their property was lawful. Docket No. 127 at 13 n.9. The United States has highlighted this admission several times, and did so again in its motion to certify, see Mot. to Certify at 10, and plaintiffs consistently ignore it, just as they have done again in their response to the motion to certify.

At the front and center of that debate is Rosner v. United States, 231 F. Supp. 2d 1202 (S.D. Fla. 2002). The United States repeatedly has argued that Rosner, which involved an APA claim for the return of property allegedly seized by the United States military near the end of World War II but which was filed more than fifty years after peace was declared, supports its position that the military authority exception bars the APA claim in this case. See Mot. to Certify at 9; Docket No. 120-2 at 6-7; Docket No. 131 at 7-9. Plaintiffs never have grappled with the substance of the Rosner decision in their extensive briefing throughout this litigation. So it is with their response to the motion to certify, where they instead note merely that this Court did not rely on Rosner "to support the distinction between the seizure and the failure to return Plaintiffs' property." Pls. Resp. at 9 n.5. But that is exactly the point. Because Rosner indicates that the military authority exception would bar a claim for the return of property seized by the military during wartime—regardless of whether the subsequent alleged failure to return the property involves an exercise of military authority in the field of battle—and because it is the only case that even comes close to analyzing the military authority exception in such a context, the question of whether the exception applies here is certainly contestable.[6]

---

[6] Proving this point all the more is plaintiffs' continued reliance on Jaffee v. United States, 592 F.2d 712 (3d Cir. 1979), Pls. Resp. at 8-9, which this Court described as "underscor[ing] the distinction between the initial seizure and the failure to return property," Vance I, 2009 WL 2252258, at *4, but which did not involve a property dispute at all. Not only is Jaffee thus readily distinguishable (plaintiffs' concession that it is not "factually identical," Pls. Resp. at 8, is an understatement), it is from outside the Seventh Circuit. But even assuming plaintiffs were right that Jaffee is somehow relevant to their APA claim (and we respectfully disagree with the Court's conclusion that it is), what matters for purposes of a certification request is not, as they say, simply that their position is "supported by analogous case law," id. at 9; it is instead whether there is a "substantial ground for difference of opinion," 28 U.S.C. § 1292(b). That standard is clearly met here given that Rosner is far more similar, both factually and legally, to this case than Jaffee and provides support by direct inference for the United States' position.

### 4. Certifying An Interlocutory Appeal Would Materially Advance This Case

In its opening brief the United States showed how allowing an interlocutory appeal would in several ways "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b). See Mot. to Certify at 11-13. Plaintiffs' response to those arguments is yet another exercise in avoidance. For example, the United States noted that a decision in its favor would result in its dismissal from the case due to lack of subject matter jurisdiction. See id. at 11. Plaintiffs' only criticism of this is that it assumes the United States "is right on the merits." Pls. Resp. at 13. But that is precisely the reasoning used by this Court in Buntrock in finding that an interlocutory appeal there would materially advance the litigation: "If the Seventh Circuit reverses our decision regarding subject matter jurisdiction, then the case will have to be dismissed. Accordingly, it makes much more sense for these issues to be addressed by the Seventh Circuit now, as opposed to at the conclusion of the lawsuit." Buntrock, 2003 WL 260711, at *3. As in Buntrock, the question proposed for certification in this case is just the sort of "threshold question" the resolution of which "now may materially advance the ultimate termination of the litigation." Johnson v. Burken, 930 F.2d 1202, 1205 (7th Cir. 1991).

The United States further has explained that, even if the Seventh Circuit did not rule in its favor, certifying an interlocutory appeal nevertheless would save substantial judicial resources by allowing the Circuit Court to resolve all of the disputed issues in this case on a single, consolidated appeal, given that defendant Rumsfeld's appeal of Vance II already has been docketed. That, in turn, would significantly streamline the proceedings on any potential remand to this Court. See Mot. to Certify at 12-13. Plaintiffs' sole retort to this argument is to suggest that one defendant should not be allowed to "piggyback" a permissive interlocutory appeal on top of a co-defendant's interlocutory appeal of right "by simply arguing that the Seventh Circuit

should take all of the defendants' objections together." Pls. Resp. at 14. Once again, though, plaintiffs do not address the case law cited by the United States that explains why that is one of the very reasons for issuing a certificate of appealability. See Mot. to Certify at 12-13 (citing Estate of Escobedo v. City of Fort Wayne, No. 05-424, 2008 WL 4411485, *3 (N.D. Ind. Sept. 25, 2008) (finding that certifying interlocutory appeal would "speed up the litigation because a number of claims in this case already are on appeal" and it therefore "would be more efficient for the appeals court to consider and decide from among all the claims in this case which claims should go to trial or be resolved as a matter of law now")). That becomes an even stronger reason when considering that both defendant Rumsfeld's and the United States' appeals raise overlapping and core separation-of-powers concerns, see Mot. to Certify at 11-12, another point plaintiffs do not address except to again misstate the question presented and speculate about how the Seventh Circuit might analyze those concerns, see Pls. Resp. at 14-15.

Plaintiffs similarly fail to appreciate the efficiencies that would be gained in this Court if it certified (and the Seventh Circuit accepted) an interlocutory appeal by the United States. First, they tacitly concede that certifying an interlocutory appeal would make it unnecessary at this time, if ever, for the Court (whether it be the District Judge currently assigned to the case or a new judge assigned to it after the former's retirement) to rule on the United States' pending motion to dismiss or, in the alternative, for summary judgment (Docket No. 182). Second, the Seventh Circuit's resolution of an appeal on whether this Court has subject matter jurisdiction over the United States may make it unnecessary for the parties to engage in, and the Court to manage, any discovery into plaintiffs' APA claim, such as that suggested in Vance I. See Vance I, 2009 WL 2252258, at *4. According to plaintiffs, however, "unless the United States is successful on appeal, discovery on this claim will have to be undertaken at some point and there

is no reason for that discovery not to proceed ahead." Pls. Resp. at 16 (internal quotations and citation omitted). This position is again directly refuted by Buntrock, which explained:

> It would be a substantial waste of not only this Court's judicial resources but also the personal funds of the defendants if this case were to proceed forward and then ultimately be reversed because the Seventh Circuit determined we did not possess subject matter jurisdiction over the lawsuit in the first place.

Buntrock, 2003 WL 260711, at *3.

That leads to the primary reason for plaintiffs arguing that certification will not advance this case. It is their notion that, if the Court grants both the motion to certify and defendants' motion to stay, they will be prevented from obtaining still more discovery from the United States into the identities of, and from suing, the "John Doe" defendants. See Pls. Resp. at 12-13.[7] In other words, plaintiffs oppose certification because they wish to bring dozens of more defendants into this or possibly other cases. If anything, that prospect bolsters the conclusion that certifying an interlocutory appeal would materially advance the litigation as it would potentially head off additional protracted, costly, and complex litigation in the future.[8]

---

[7] Plaintiffs can no longer legitimately claim that they need such discovery "before the clock runs out on their claims against those defendants." Pls. Resp. at 13. Plaintiffs themselves have represented repeatedly that the statute of limitations against the unnamed defendants "may be as short as one year," Docket No. 23 at 3, and no more than three years. See Docket No. 38 at 3 n.1; Docket No. 66 at 5; Docket No. 83 at 4; Docket No. 105 at 2-3. The clock on plaintiffs' claims against the unknown defendants therefore would have run out long ago, at the very latest by July 2009. The only question now is whether the statute of limitations should be equitably tolled were plaintiffs ever to sue any of the unidentified defendants.

[8] This is especially true given that the Seventh Circuit's resolution of defendant Rumsfeld's appeal will provide critical guidance on the viability of plaintiffs' claims against the "John Doe" defendants, claims that remain the sole focus of plaintiffs' discovery requests on the United States. As discussed more extensively in the United States' reply in support of its motion to stay, plaintiffs' assertion that "the Seventh Circuit's opinion on Defendant Rumsfeld's appeal is unlikely to have any bearing on whether Plaintiffs can sue the unidentified defendants," Docket No. 239 at 11 n.5, is without merit.

### 5. The United States' Motion To Certify Is Timely Under The Circumstances

With all four statutory criteria for certifying an interlocutory appeal in this case clearly satisfied, the only remaining consideration is whether the United States' motion to certify is timely. See Ahrenholz, 219 F.3d at 675. In contending that it is not, plaintiffs engage in speculation about the government's internal deliberations, accuse the United States of making "frivolous" arguments, and again fail to respond to the issues raised.

As explained in its opening brief, it was appropriate for the United States to await the Court's resolution of defendant Rumsfeld's motion to dismiss before requesting certification. Until that time, an interlocutory appeal by only the United States would have addressed just one of plaintiffs' fourteen counts against just one of the defendants in the action. And because an appeal under those circumstances arguably would not have "materially advance[d] the ultimate termination of the litigation," 28 U.S.C. § 1292(b), which would have been a dispositive ground for denying certification, it was reasonable for the United States to wait for the Court to issue Vance II. At that time an interlocutory appeal by the United States would materially advance the termination of the litigation because it would allow the Seventh Circuit to resolve all remaining issues and claims at once (either due to the high likelihood of an interlocutory appeal by defendant Rumsfeld if the Court denied any part of his motion to dismiss or due to the possibility of the Court granting that motion in its entirety). See Mot. to Certify at 13-14.

In their response plaintiffs simply label the above argument "frivolous" and suggest without foundation that the United States "did not seize upon" the idea of filing a motion to certify "until it learned that the Court had denied" defendant Rumsfeld's motion to dismiss. Pls. Resp. at 17. Yet plaintiffs do not respond to the fact that defense counsel in this case filed two separate motions to request a decision on defendant Rumsfeld's motion to dismiss after the Court

had denied the United States' motion to dismiss, all in an effort to expedite the proceedings; nor do plaintiffs even acknowledge that they actually opposed one of those motions. See Mot. to Certify at 14. There can be no doubt under such circumstances that the United States has acted appropriately and in good faith. Waiting for the Court to rule on defendant Rumsfeld's motion to dismiss, and for any corresponding appeal to be filed, before requesting certification was proper for exactly the reason the United States has articulated—because it would "speed up the litigation" and "be more efficient for the appeals court to consider and decide from among all the claims in this case which claims should go to trial or be resolved as a matter of law now" once other "claims in this case already are on appeal." Estate of Escobedo, 2008 WL 4411485, at *3.

Plaintiffs admit that "courts have not demarcated a set timeframe that is presumptively unreasonable." Pls. Resp. at 16. That is because timeliness must be gauged by what is reasonable under the particular circumstances of each case. See Ahrenholz, 219 F.3d at 675 (noting that § 1292(b) petition needs to be filed within a "reasonable time after the order sought to be appealed") (emphasis omitted). Given the procedural posture of this case, and for all of the reasons discussed throughout this and the United States' opening brief, the United States' motion to certify should be considered timely. See, e.g., City of Joliet v. Mid-City Nat'l Bank, No. 05-6746, 2008 WL 4889038, *3 (N.D. Ill. June 13, 2008) (finding certification petition timely when filed nine months, two months, and six weeks after the three orders at issue had been entered).[9]

---

[9] Apart from not acknowledging City of Joliet, plaintiffs suggest that the United States' motion to certify is untimely because it was filed "over a month" after the Court issued Vance II. Pls. Resp. at 17. What they do not mention is that government counsel specifically informed the Court and plaintiffs' counsel during a status hearing on March 25, 2010, less than three weeks after Vance II was issued (on March 5, 2010), that the government intended to file a motion to certify, or that the United States did so on the date set by the Court (April 9, 2010). See Docket No. 222. By no definition could the timing of the motion to certify be considered unreasonable under such circumstances.

**CONCLUSION**

For the reasons stated above, the United States respectfully requests that the Court grant its motion to certify an interlocutory appeal.

Respectfully submitted this 14th day of May 2010,

| | |
|---|---|
| TONY WEST | PATRICK J. FITZGERALD |
| Assistant Attorney General, Civil Division | U.S. Attorney, Northern District of Illinois |
| | |
| TIMOTHY P. GARREN | ERIC S. PRUITT |
| Director, Torts Branch, Civil Division | Assistant U.S. Attorney |
| | 219 South Dearborn Street |
| MARY HAMPTON MASON | Chicago, IL  60604 |
| Senior Trial Counsel, Torts Branch, Civil Division | |

/s/ James R. Whitman
JAMES R. WHITMAN (D.C. Bar No. 987694)
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel:  (202) 616-4169
Fax:  (202) 616-4314

Attorneys for the United States